944 F.2d 890
 James A. BAIRD, Theron R. Barnes, Jimmy W. Downs, Nash R.
Folley, James C. Hobbs, Melvin H. Hudgins, Webster T.
Johnson, James F. Mahan, Elmer M. Meyer, Jerry E. Moore,
Frank Novak, Olen G. Ray, Russell W. Reneau, Kenneth A.
Sims, and Jacob J. Voos, Plaintiffs/Cross-Appellants,
v.
Armand SONNEK, Helium Operations Division, Robert Horton,
Bureau of Mines, William Clark and United States
Department of Interior, Defendants-Appellants.
 Nos. 91-1059, 91-1063.
 United States Court of Appeals,
Federal Circuit.
 Sept. 17, 1991.
 
 Donald P. MacDonald, Hornbein, MacDonald, Fattor and Hobbs, P.C., of Denver, Colo., argued for plaintiffs/cross-appellants. With him on the brief was Timothy Hoffman, Hoffman, Sheffield and Sauseda, of Amarillo, Tex.
 Beatrice G. Chester, Atty., Office of Sol., U.S. Dept. of Interior, of Washington, D.C., argued for defendants-appellants. With her on the brief were Stuart Gerson, Asst. Atty. Gen., Marvin Collins, U.S. Atty., William Kanter and William G. Cole, Attys., Dept. of Justice, of Washington, D.C.
 Before LOURIE, CLEVENGER and RADER, Circuit Judges.
 RADER, Circuit Judge.
 
 
 1
 The Government appeals the June 27, 1989 and August 16, 1989 orders of the United States District Court for the Northern District of Texas. The district court refused to limit plaintiffs' wages for fiscal years (FY) 1979 and 1980, but applied a limit to plaintiffs' wages for FY 1981, 1982 and 1983. Under the stipulated facts, plaintiffs' wages fall within the statutory caps for all five years. Therefore, this court reverses the district court's ruling for FY 1979-80 and affirms its ruling for FY 1981-83.BACKGROUND
 
 
 2
 James Baird and fourteen other plaintiffs are supervisors in the Helium Operations Division of the U.S. Department of Interior's Bureau of Mines. These prevailing rate employees under 5 U.S.C. § 5342(a)(2) supervise ungraded employees who are members of a collective bargaining unit. The supervisors do not belong to any bargaining unit. Helium Operations pays both the supervisors and the union employees with appropriated funds.
 
 
 3
 In 1952, Helium Operations' nonsupervisory employees entered into a collective bargaining agreement. Under this agreement, the union met each year with Helium Operations to set a new pay rate based on a wage survey of similar private sector operations. These negotiations produced amicable agreements until the pay cap statutes took effect.
 
 
 4
 A special Office of Personnel Management (OPM) wage schedule links the supervisors' pay to the union pay rates. See 5 U.S.C. § 5343(c)(3)(B). Under this schedule, the supervisors receive between ten and sixty percent more than the union wage depending on the individual supervisor's classification, i.e., Foreman I-IV. These percentage formulas have not been changed pursuant to a wage survey since first set in 1969. Thus, the special wage schedule ties the supervisors' pay directly to the union wages. The union wages, in turn, are negotiated and established on the basis of survey results.
 
 
 5
 In FY 1979-83, Congress limited the pay increases of employees paid with appropriated funds. See, e.g., Pub.L. No. 95-429, § 614(a), 92 Stat. 1018 (1978); Pub.L. No. 96-74, § 613(a), 93 Stat. 576 (1979). For FY 1979-83, the wages for union and supervisory employees exceeded the statutory pay caps. Despite the pay caps, both categories of employees received these pay increases. On February 20, 1983, the union personnel at Helium Operations received a wage increase, but the supervisors did not. Instead Helium Operations informed the supervisors that, due to an agency error, they had received wage increases in FY 1979-82 beyond the statutory pay caps. Under the Helium Operations determination, these pay cap statutes should have limited the supervisors' wages.
 
 
 6
 On June 15, 1983, OPM announced that the supervisors must repay the FY 1979-82 wage increases. The Director of the Bureau of Mines consequently rolled back the supervisor's pay, effective October 2, 1983, to the pay rate required by the caps.
 
 
 7
 The Interior Department requested the General Accounting Office (GAO) to issue a blanket waiver for the supervisors' 1979-82 salary overpayments. GAO refused to issue a blanket waiver, but agreed to consider waiver requests from individual supervisors. Later GAO honored all the individual requests and waived repayment of any overpayment before July 19, 1983. Because the supervisors presumably knew about the unauthorized overpayments and should have acted to reduce damages, the GAO declined waivers for July 19, 1983 through October 2, 1983.
 
 
 8
 The supervisors sued in district court to retain the July-October 1983 overpayment, to reinstate their wages to the rate before the pay caps, and to receive raises based on the union employees' February 1983 increase. The parties agreed to a trial on stipulated facts. The district court ruled that the supervisors were not subject to the wage caps for FY 1979-80 but were subject to the wage caps for FY 1981-83. The Government moved for a new trial or in the alternative for a stay of the judgment pending appeal. The trial court denied the new trial motion but granted the stay.
 
 
 9
 Helium Operations appealed and the supervisors cross-appealed to the United States Court of Appeals for the Fifth Circuit. On Helium Operations' motion under 28 U.S.C. § 1631, the Fifth Circuit transferred the case to this court. This court has jurisdiction under 28 U.S.C. §§ 1292 and 1295.
 
 DISCUSSION
 1979-80 Statutes
 
 10
 The pay cap statute for FY 1979 states:(a) No part of any of the funds appropriated for th[is] fiscal year ... may be used to pay the salary or pay of any individual in any office or position in an amount which exceeds the rate of salary or basic pay payable for such office or position on September 30, 1978, by more than 5.5 percent, as a result of any adjustments which take effect during such fiscal year under--
 
 
 11
 ....
 
 
 12
 (3) section 5343 of title 5, United States Code, if such adjustment is granted pursuant to a wage survey (but only with respect to prevailing rate employees described in section 5342(a)(2)(A) of that title).
 
 
 13
 Treasury, Postal Service, and General Government Appropriations Act, 1979, Pub.L. No. 95-429, § 614, 92 Stat. 1018 (1978) (emphasis added). The FY 1980 pay cap statute contains almost identical language. This language limits wage increases for prevailing rate employees "if such adjustment is granted pursuant to a wage survey." Pub.L. No. 96-74, § 613(a), 93 Stat. 576 (1979). The supervisors are prevailing rate employees. Thus, the FY 1979-80 caps apply if Helium Operations adjusts the supervisors' salary "pursuant to a wage survey."
 
 
 14
 The words "pursuant to" suggest the relationship between wage adjustments and wage surveys necessary to subject the supervisors to the pay cap. Springing etymologically from the verb "pursue," the prepositional phrase "pursuant to" carries the meaning of "following upon, consequent on and conformable to," and "in accordance with." THE SHORTER OXFORD ENGLISH DICTIONARY 1625 (3d ed. 1959). In each sense of the phrase, Helium Operations granted the supervisors' FY 1979-80 wage adjustments "pursuant to a wage survey."
 
 
 15
 The stipulated facts show this relationship:
 
 
 16
 A number of private sector plants, performing functions similar to Helium Operations, are surveyed and the wages of Helium Operations' nonsupervisory employees are negotiated and established on the basis of the survey results.
 
 
 17
 Statement of Stipulated Facts at 2, p 4. Thus, the Government sets the wages of the union employees based on the survey results. The stipulated facts further explain:
 
 
 18
 Helium Operations establishes the supervisory wage rates administratively by adding ... [a] percentage differential to the [union wage]....
 
 
 19
 Id. at p 5. Accordingly, the Government sets plaintiffs' wages by adding a fixed percentage to the union wages, which are based on survey results.
 
 
 20
 A formula governs adjustment of plaintiffs' wages. All elements of that formula, save one, are constant. The single variable element in that formula is a wage survey. Changes in the annual survey translate into adjustments in the supervisors' wages. On this same point, the district court found:
 
 
 21
 From 1960 to 1983 whenever a higher rate of pay was negotiated by the Union for the nonsupervisory employees, the pay rate of the supervisory employees was increased by the predetermined percentage.
 
 
 22
 Baird v. Sonnek, No. CA 2-85-238, Order at 2 (N.D.Tex. June 26, 1989). The district court further found that Helium Operations did not negotiate with the supervisors before adjusting their wages according to the formula. Id. Thus, following upon and in accordance with a wage survey, the Government adjusted plaintiffs' wages. In sum, the Government adjusted the supervisor's wages "pursuant to a wage survey."
 
 
 23
 The district court concluded, "[i]t is undisputed that Plaintiffs' wage increases are not based upon wage surveys...." Id. at 8. In light of the direct and automatic relationship between surveys for union wages and adjustments in plaintiffs' wages, this conclusion is clearly erroneous.
 
 
 24
 The district court also failed to defer properly to reasonable regulations from OPM governing the FY 1979-80 pay caps. After enactment of the 1979 statute, OPM published Federal Personnel Manual System Bulletin 532-33, October 16, 1979, to interpret and implement the pay caps. This Bulletin, under the heading Wage Schedules Subject to Limitation, specified the wage schedules subject to the pay caps:
 
 
 25
 The limitation also applies to wage schedules produced by reference to schedules adjusted pursuant to wage surveys, and to wage schedules that have been temporarily set aside from the Federal Wage System pending study by the Federal Prevailing Rate Advisory Committee.
 
 
 26
 The supervisors' class of wage schedules satisfies both regulatory requirements for pay cap coverage. As already discussed, the supervisors' wage schedules are produced by reference to the union schedules which are adjusted pursuant to a survey.
 
 
 27
 Moreover, the supervisors' wage schedule had been set aside from the regular wage system pending further study by the Federal Prevailing Rate Advisory Committee (FPRAC). Plaintiffs stipulated that OPM FPMS 532-1, Appendix V, Listing of Agency Special Schedules and Rates Documented Under the Federal Wage System, governs their wages. According to that document, OPM submitted as early as 1973 the supervisors' special pay schedule to the FPRAC for study:
 
 
 28
 As an interim measure they [the supervisory pay schedules] are continued as special schedules under the Federal Wage System until they have been reviewed and decisions have been made on the recommendations of the Federal Prevailing Rate Advisory Committee.
 
 
 29
 Thus, under both definitions in the 1979 OPM directives, plaintiffs' wages were subject to the pay caps.
 
 
 30
 In the absence of compelling indications of error in an agency's implementing regulations, this court defers to an agency's reasonable interpretation of a statute. Chula Vista City School Dist. v. Bennett, 824 F.2d 1573, 1579-80 (Fed.Cir.1987), cert. denied, 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 861 (1988). This is particularly true where the administrative interpretation "involves a contemporaneous construction of a statute." Udall v. Tallman, 380 U.S. 1, 17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1964), (citing Power Reactor Co. v. Electricians, 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1960)). OPM reasonably construed the FY 1979-80 pay cap statutes to apply to plaintiffs' wages. The district court erred in disregarding these regulations.
 
 
 31
 The language of the FY 1979-80 pay cap statutes covered plaintiffs' wages. Moreover OPM reasonably interpreted these laws to apply to the supervisors' pay schedule. This court therefore reverses the district court's decision as it relates to the FY 1979-80 statutes.
 
 1981-83 Statutes
 
 32
 In FY 1981-83, Congress broadened the pay cap statutes to include all prevailing rate employees, including the supervisors. The FY 1981 wage cap statute states:
 
 
 33
 (a) Notwithstanding any other provision of law, no part of any of the funds appropriated for the fiscal year ending September 30, 1981, by this Act or any other Act, may be used to pay any prevailing rate employee described in section 5342(a)(2)(A) of title 5, United States Code, or an employee covered by section 5348 of that title....
 
 
 34
 Pub.L. No. 96-369, § 114(a), 94 Stat. 1356 (1980) (emphasis added). The FY 1982 and 1983 pay caps contain virtually identical language.
 
 
 35
 The district court correctly determined that this language applied to all prevailing rate employees, including plaintiffs. The district court also correctly determined that the plaintiffs are not subject to any exemptions under the FY 1981-83 statutes. Specifically, section 9(b) of the Prevailing Rate Systems Act, Pub.L. No. 92-392, § 9(b), 86 Stat. 573 (1972), does not exempt plaintiffs from coverage of the caps. This section exempts from the pay caps employees who negotiate wages as required by their contracts.* The district court noted:The tie-in of Plaintiffs' wages to that of the non-supervisory employees negotiated wages does not preclude the application of the statutes for FY 1981, 82 and 83. Plaintiffs fall within the broad application of those statutes but are not excepted from the limitation by any clause as are § 9(b) employees.
 
 
 36
 Order at 14. The stipulated facts and findings of the district court clarify that the Government does not negotiate to set plaintiffs' wages. Although adjusted pursuant to wage surveys, plaintiffs' wages are not negotiated. Therefore, section 9(b) does not exclude the supervisors' wages from the pay caps.
 
 
 37
 The FY 1981-83 statutes also do not conflict with 5 U.S.C. § 5341. Section 5341 of Title 5 states Congress's policy that the wages of supervisory personnel should remain in accordance with prevailing levels for comparable work within a local wage area. The statutory mandates of section 5343, however, implement the policies of section 5341. Congress expressly amended section 5343 in the FY 1981-83 statutes to cap wages. In other words, Congress modified the preexisting policies and laws by enactment of the pay caps. Here, the district court properly interpreted and applied the law.
 
 
 38
 Finally, the pay caps do not violate the supervisors' due process rights under the Constitution. The fourteenth amendment to the Constitution extends procedural protections to vested rights or property interests. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). The Government cannot deny an individual a protected interest without hearings or other procedural safeguards. In this case, however, the supervisors never acquired a vested right to salary increases. The United States Court of Appeals for the District of Columbia explained:
 
 
 39
 Only when the agency fixes and orders a raise do workers acquire a vested right to that raise.
 
 
 40
 American Fed'n of Gov't Employees, AFL-CIO v. Campbell, 659 F.2d 157, 163 (D.C.Cir.1980), cert. denied, 454 U.S. 820, 102 S.Ct. 103, 70 L.Ed.2d 92 (1981). Because Congress enacted the pay caps before the supervisors received pay increases, plaintiffs did not acquire any vested right to a pay raise. When, after enactment of the pay caps, plaintiffs received pay increases, those raises exceeded the legal limits. Thus, those raises in excess of legal limits did not vest any constitutionally protected rights in plaintiffs. Moreover, the Government did not attempt to recoup the excessive wages. Rather GAO waived repayment upon request of all pay increases in excess of the pay cap statutes. Therefore, the supervisors had no vested right requiring constitutional protections.
 
 CONCLUSION
 
 41
 The stipulated facts, district court findings, and the statute require application of the FY 1979-80 pay caps to plaintiffs. The district court correctly applied the FY 1981-83 pay caps to plaintiffs. Therefore, this court reverses the district court's decision as to the FY 1979-80 statutes and affirms the district court's decision as to the FY 1981-83 statutes.
 
 COSTS
 
 42
 Each party to bear its own costs.
 
 
 43
 AFFIRMED IN PART, REVERSED IN PART.
 
 
 
 *
 In 1982, the Interior Department determined that this exemption applied to Helium Operations' union employees. Therefore, the pay caps did not cover these union employees. In early 1983, Helium Operations determined that the section 9(b) negotiated wage exemption did not apply to the supervisors. The 1983 pay cap statute repealed this exemption. See Pub.L. No. 97-276, § 109, 96 Stat. 1191 (1982)