**Kenneth D. MARTIN, Petitioner,**

v.

**DEPARTMENT OF THE AIR FORCE, Respondent.**

No. 98–3401.

United States Court of Appeals, Federal Circuit.

July 30, 1999.

Stuart A. Kirsch, Assistant General Counsel, American Federation of Government Employees, AFL–CIO, of Riverdale, Georgia, argued for petitioner.

Michal L. Tingle, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With her on the brief were David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, and Anthony H. Anikeeff, Assistant Director.

Before BRYSON, Circuit Judge, ARCHER, Senior Circuit Judge, and GAJARSA, Circuit Judge.

GAJARSA, Circuit Judge.

Kenneth D. Martin petitions for review of the decision of the Merit Systems Protection Board ("MSPB" or "Board"), Docket No. AT–0752–93–0255–X–2, *Martin v. Department of the Air Force*, 79 M.S.P.R. 380 (1998) ("*Martin II* "). In its decision, the Board granted the Office of Personnel Management's ("OPM's") request to intervene, vacated a Board decision finding agency noncompliance with the Board's November 19, 1993 decision, *see Martin v. Department of the Air Force*, 72 M.S.P.R. 88 (1996) ("*Martin I* "), and dismissed Martin's petition for enforcement as moot. Because we find that the Board based its decision on an unreasonable interpretation of the Back Pay Act, 5 U.S.C. § 5596 (1994), we reverse and remand for recalculation of petitioner's back pay.

## BACKGROUND

On January 15, 1993, Kenneth D. Martin was removed from civilian employment with the Air Force ("the agency") as an aircraft mechanic at Warner Robins Air Logistics Center, Robins Air Force Base, Georgia. Martin appealed his removal to the MSPB. The removal was reversed, Martin was retroactively reinstated, and the agency was ordered to award Martin back pay with interest.

Martin returned to work with the agency on January 11, 1994. Between the time of his removal and the time of reinstatement, Martin was employed in several non-government positions. He was injured[1] while employed as a wrecker driver/mechanic with an automobile dealership and received state workers' compensation ben-

---

1. Martin was injured at work when another employee struck (rear-ended) the vehicle he was operating.

efits from September 9, 1993 to January 10, 1994 because of the injury. When the agency reinstated Martin, he was placed on leave without pay status; he was also informed that he would not be given back pay for the period of time he was receiving workers' compensation benefits because he had been unable to work during that time period. Martin had spinal fusion neck surgery in August 1994, and was physically able to return to work with the agency in January 1995, with some lifting restrictions.

On March 30, 1994, Martin filed a petition for enforcement to the MSPB claiming that he was improperly denied back pay from September 9, 1993 through January 10, 1994. The administrative judge ("AJ") issued a recommendation finding the agency in noncompliance. The AJ found Martin to be entitled to back pay under 5 U.S.C. § 5596 (the Back Pay Act), with an offset from the state workers' compensation payments he had received during that period.[2] The agency filed a disagreement with these recommendations with the full MSPB. In *Martin I*, the Board analogized the Back Pay Act to the back pay provisions of § 10(c) of the National Labor Relations Act (NLRA), *see* 29 U.S.C. § 160(c) (1994), and of Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C.

§ 2000e–5(g)(1) (1994). Using decisions interpreting these back pay provisions as a guide, the Board held that "an award of back pay would be appropriate where the interim disability is closely related to the nature of the interim employment or arises from the unlawful discharge and is not an usual incident of the hazards of living generally." *Martin I*, 72 M.S.P.R. at 93. The Board affirmed the AJ's recommendation as modified, finding the agency in noncompliance and finding Martin entitled to back pay with offset. However, the Board found that workers' compensation payments have two components, one being a payment for lost wages, the other being reparation for physical damage suffered, and only the lost wage component should be used to offset the back pay award. The Board remanded the case for further adjudication to determine the exact amounts. OPM then filed a request to intervene because the Board's decision was based on an OPM regulation implementing the Back Pay Act.

On remand, the AJ ordered the agency to award Martin back pay for the period in question, offset by $4098.[3] The agency filed exceptions to the recommendation to the full Board. The Board reversed the AJ's recommendation (and effectively the Board's decision in *Martin I*), finding that

**2.** The applicable provision of the Back Pay Act states that:

(b)(1) An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—

(A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—

(i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the

period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period; ...

5 U.S.C. § 5596(b)(1) (1994). The Back Pay Act was amended in 1998, but the above provision was not amended.

**3.** At the same time Martin was seeking back pay through Board enforcement actions, he also initiated a civil suit in Georgia state court against the employee who was driving the vehicle that struck him. The insurance company for the workers' compensation program intervened, seeking a lien on any portion of a judgment to which they might be statutorily entitled. Martin entered into a settlement agreement with the insurance company and the automobile dealership/employer. Martin then entered into a settlement agreement with the employee driving the vehicle that struck him; part of the award was paid to him, and part was paid to the insurance company.

Martin was not entitled to any back pay for the period he was receiving state workers' compensation benefits. The Board noted that the OPM regulations implementing the Back Pay Act, specifically 5 C.F.R. § 550.805(c), prohibited an agency from providing back pay to an employee who was not "ready, willing, and able to perform his or her duties because of an incapacitating illness or injury." *Martin II*, 79 M.S.P.R. at 385. The Board found that OPM's interpretation of the regulation was consistent with the statute because the offset provision as provided in the Back Pay Act was to prevent an employee from obtaining a windfall. *See id.* The Board also found that under OPM's interpretation of 5 C.F.R. § 550.805(c), the circumstances surrounding a disability, or the causal connection between any injury suffered in replacement employment and an unwarranted termination, are irrelevant. *See id.* at 385–86. The Board recognized that in *Martin I* the Board had looked to the causal connection rule used in determining back pay under the NLRA. However, the Board stated that "it is also reasonable to find that such a rule is too speculative, as it is not possible to determine with certainty that the employee would not have been injured in his former job." *Id.* The Board therefore found that OPM's refusal to adopt a causation rule did not constitute an impermissible construction of the Back Pay Act. *See id.* at 386. Martin now appeals the Board's decision in *Martin II*.

## DISCUSSION

### 1. Standard of Review

The main issue presented in this appeal is whether, under the Back Pay Act, an employee who has been found to have been wrongfully terminated is entitled to back pay, with appropriate offsets, for a period during which he received state workers' compensation benefits for injuries suffered during interim employment. This is a matter of statutory interpretation for which the Supreme Court has instructed that

[w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Therefore, if Congress has not directly spoken on the issue of state workers' compensation benefits and the Back Pay Act, we look to OPM's interpretation of the Act and its interpretation of the implementing regulations, in particular 5 C.F.R. § 550.805(c).

The Back Pay Act itself provides that the "Office of Personnel Management shall prescribe regulations to carry out this section [*i.e.,* the Back Pay Act]." 5 U.S.C. § 5596(c). In such a situation, we give deference to the agency's construction of the regulation and "the validity of a regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes of the enabling legislation.'" *Mourning v. Family Publications Serv., Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973) (quoting *Thorpe v. Housing Auth. of Durham,* 393 U.S. 268, 280–81, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969)). "In determining whether a particular regulation carries out the congressional mandate in a proper manner, we look to see whether the regulation har-

monizes with the plain language of the statute, its origin, and its purpose." *National Muffler Dealers Assoc. v. United States*, 440 U.S. 472, 477, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979); *see also DeCosta v. United States*, 987 F.2d 1556, 1558 (Fed. Cir.1993) (court does not disturb agency's interpretation of a statute unless it contravenes legislative intent or is otherwise unreasonable).

### 2. Analysis

■ The language of the Back Pay Act states in general terms that an employee who has suffered an unwarranted personnel action and properly appeals the action is entitled to back pay "equal to all or any part of the pay ... as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period...." 5 U.S.C. § 5596(b)(1)(A)(i). The statute itself does not address specifically how an agency is to calculate a back pay award and under what circumstances an employee who otherwise might be entitled to back pay is not to be awarded back pay by an agency. Rather, Congress authorized OPM to prescribe specific regulations to carry out the Back Pay Act. *See id.* § 5596(c). Pursuant to this authority, OPM has issued implementing regulations concerning the computation of back pay and has instructed that

(c) Except as provided in paragraph (d) of this section, in computing the amount of back pay under section 5596 of title 5, United States Code, and this subpart, an agency may not include—

(1) Any period during which an employee was not ready, willing, and able to perform his or her duties because of an incapacitating illness or injury; or

(2) Any period during which an employee was unavailable for the performance of his or her duties for reasons other than those related to,

or caused by, the unjustified or unwarranted personnel action.

5 C.F.R. § 550.805(c) (1998).

Martin argues that an interpretation of the Back Pay Act and the implementing regulation that prohibits an agency from awarding back pay to an improperly discharged employee who suffered a replacement work-related injury is too narrow of an interpretation and is inconsistent with the language and the intent of the statute. Martin also contends that under 5 C.F.R. § 550.805(c)(2), which should be read in conjunction with subsection (c)(1), he should be entitled to back pay because he was unavailable for reasons related to and caused by the unjustified personnel action. Finally, Martin argues that the Back Pay Act should be interpreted in light of the back pay provisions of other statutes, such as the NLRA and Title VII of the Civil Rights Act of 1964.

The agency argues that under the explicit language of 5 C.F.R. § 550.805(c)(1), Martin is not entitled to back pay for the period of September 9, 1993 through January 10, 1994 because he was not ready, willing, and able to work due to an incapacitating injury. According to OPM's interpretation of the statute and the regulation, the cause of the injury is not relevant under the regulation. The agency also argues that § 550.805(c)(2) does not entitle Martin to back pay because subsections (c)(1) and (c)(2) are stated in the disjunctive, setting forth alternative and sufficient bases for excluding periods from a back pay award. Finally, the agency argues that the cases interpreting back pay provisions of other statutes do not involve the Back Pay Act itself or the implementing regulation at issue; in addition, none of the cases involves an agency regulation interpreting the relevant back pay provisions.

■ We defer to OPM's interpretation of the Back Pay Act absent compelling indication of error in an agency's implementing regulations. *See Baird v. Sonnek*, 944 F.2d 890, 894 (Fed.Cir.1991). In

this case, however, we find OPM's interpretation of the Back Pay Act – precluding an award of back pay to an employee who suffered an unwarranted personnel action, for a period of time during which he was receiving state workers' compensation benefits for injuries suffered during interim employment – to be unreasonable. OPM's interpretation does not harmonize with the intent of the Act. The purpose of the Act was to "consolidate and liberalize existing law on the restoration of an employee to his position after an adverse action against him has been found by appellate authority to have been erroneous or unjustified." S. Rep. No. 89–1062, 1 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2097. More specifically, the Act "puts the employee in the same position he would have been in had the unjustified or erroneous personnel action not taken place." *Id.* And the basic principle of back pay, adopted by Congress in 1948, "holds that an employee is entitled to be made whole whenever an erroneous personnel action which has terminated or reduced his compensation is corrected by appropriate authority." *Id.*

█ The main issue before us is whether the Board must look at the cause of a disability before excluding the period of time a wrongfully terminated employee was disabled and unable to work from the back pay period. According to the language of the Act itself, a wrongfully terminated employee is entitled to back pay equal to an amount he *"normally would have earned or received* during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period." 5 U.S.C. § 5596 (emphasis added). This statutory language does not explicitly require a causation analysis. However, the Congressional intent of the Back Pay Act, along with the requirement of a causation analysis in connection with the back pay provisions of similar federal statutes lead us to hold that denying an employee back pay for a period of disability without looking at the cause of the disability is unreasonable.

While we agree that the cases interpreting the back pay provisions of other federal statutes, such as the National Labor Relations Act[4] and Title VII of the Civil Rights Act of 1964[5] are not controlling in this case, we may look to them for guidance. The back pay provisions of the NLRA and Title VII are closely related, *see Albemarle Paper Co. v. Moody,* 422 U.S. 405, 419 & n. 11, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (finding that "the backpay provision [of Title VII] was expressly modeled on the backpay provision of the National Labor Relations Act ...." and analyzing legislative history of Title VII), and under both statutes, a causation analysis has been adopted in determining

4. The back pay provision of the NLRA states that:

> If upon the preponderance of the testimony taken the [National Labor Relations] Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall ... *take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter.* Provided, that where an order directs reinstatement of an employee, *back pay may be required of the employer or labor organization,* as the case may be, responsible for the discrimination suffered by him....

29 U.S.C. § 160(c) (1994) (emphasis added).

5. The back pay provision of the Title VII states that:

If the court [deciding a case brought under Title VII] finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, *and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay* (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.

42 U.S.C.2000e–5(g)(1) (1994) (emphasis added).

whether periods of disability are to be included in a back pay period. The Supreme Court recognized that the purpose of both acts was to make workers whole who had suffered on account of unfair labor practices. *See id.* This is also the stated purpose of the Back Pay Act as explicitly recognized in the legislative history of the Act. Furthermore, we have stated that in enforcing compliance of a Board cancellation of an employee's termination, we "cannot distinguish, in this regard, the MSPB's remedial powers from those of the · National Labor Relations Board (NLRB) .... the basic purpose of a reinstatement or back pay order is 'restoration of the situation, as nearly as possible to that which would have obtained but for the illegal discrimination.'" *Kerr v. National Endowment for the Arts,* 726 F.2d 730, 733 (Fed.Cir.1984) (quoting *Phelps Dodge Corp. v. NLRB,* 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941)). In determining whether periods during which an improperly discharged employee was unable to work should be included in a back pay calculation, the NLRB has stated that

> [i]t is thus apparent that the practice of disallowing backpay without inquiry as to the nature of the physical disability, *the cause thereof,* the probability of similar illness in the Respondent's [employer's] employ, etc., may be convenient but is not always equitable. Rather, we think that equity and reason require that periods of unavailability for work because of illness or accident must be considered on a case-by-case basis. *Where an interim disability is closely related to the nature of the interim employment or arises from the unlawful discharge and is not a usual incident of the hazards of living generally, the peri-*

> *od of disability will not be excluded from backpay.*

*American Mfg. Co. of Tex.,* 167 N.L.R.B. 520, 522 (1967) (emphasis added).

■ Given that the purpose of the Back Pay Act is to place a wrongfully discharged employee back in the position he would have been in had the termination not occurred and to make the employee whole, equity and reason require that if such an employee is unable to work because of an accident or illness closely related or due to interim employment or arises because of the unlawful discharge, the period of disability should be included in a back pay period. In this situation, an interpretation of the Back Pay Act denying Martin back pay, with appropriate offsets, for the period during which he was receiving workers' compensation · benefits, would be contrary to Congressional intent. Denying Martin back pay for the period between September 9, 1993 and January 10, 1994 would not place him in the same position he would have been in had he not suffered the unjustified personnel action. Martin's injury was closely related to the nature of his interim employment and was not a "hazard of living generally." In order to be made whole, as is the intent of the Back Pay Act, Martin should be awarded back pay for the time he suffered an "abnormal" interim work-related injury.[6] An interpretation of the Act that precludes the award of back pay for this time period is contrary to Congressional intent and would be unreasonable.

The final issue before us is the amount of back pay Martin should be awarded for the period in question. At the same time Martin was pursuing this enforcement action, he was also engaged in a parallel civil suit with the employee who struck him. It is unclear from the record whether the resulting settlement was considered in cal-

---

**6.** There are no doubt situations in which the injury suffered by a removed employee is so remote from the circumstances of removal that back pay could not be deemed equal to what "normally would have been earned." A possible example might be one who suffers from a congenital defect that emerges as dis-

abling after a removal action is taken. When it is clear, as in this case, however, that a person would not have sustained an injury had the removal action not been taken, OPM by regulation or otherwise cannot block the statutory right to back pay.

culating Martin's net back pay award. The Board should be given the opportunity to address this issue and to determine what part of the settlement is attributable to lost wages, and what part is attributable to damages for physical pain and suffering.[7]

## CONCLUSION

Because the Board based its decision on an unreasonable interpretation of the Back Pay Act, the decision is

*REVERSED* and the case *REMANDED*.

## COSTS

Each party to bear its own costs.

---

**7.** We agree with the reasoning in *Martin I* that only the part of the settlement agreement attributable to lost wages should be included in the offset.