# United States Court of Appeals for the Federal Circuit

03-3295,-3298

JOSEPH P. CARSON,

Petitioner,

v.

DEPARTMENT OF ENERGY,

Respondent.

Robert C. Seldon, Robert C. Seldon & Associates, P.C., of Washington, DC, argued for petitioner.

Kyle E. Chadwick, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Bryant G. Snee, Assistant Director. Of counsel on the brief was Ivan A. Boatner, Attorney, Office of Chief Counsel, United States Department of Energy, of Oak Ridge, Tennessee.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

03-3295, -3298

JOSEPH P. CARSON,

Petitioner,

v.

DEPARTMENT OF ENERGY,

Respondent.

_____

DECIDED:  March 1, 2005

_____

Before MICHEL, Chief Judge[*], NEWMAN and BRYSON, Circuit Judges.

Opinion for the court filed by Chief Judge MICHEL.  Dissenting opinion filed by Circuit Judge NEWMAN.

MICHEL, Chief Judge.

Joseph P. Carson appeals two final decisions of the Merit Systems Protection Board ("Board"), namely, (1) the May 29, 2002 decision[1] denying his petition for enforcement of the Board's final decision in his first Individual Right of Action ("IRA") appeal in Carson v. Department of Energy, Nos. AT-1221-96-0948-W-3, AT-1221-98-250-W-1, AT-1221-98-623-W-1 (Apr. 29, 1999) ("Carson I"), and (2) the February 27,

---

[*]  Paul R. Michel assumed the position of Chief Judge on December 25, 2004.

[1]  This decision, Nos. AT-1221-98-0250-C-5, AT-1221-98-623-C-5, AT-1221-96-0948-C-5, became final on July 7, 2003, when the Board denied Carson's petition for review.  See 5 C.F.R. § 1201.113(b).

2002 decision dismissing his second IRA for failing to prove retaliatory animus.[2]  Both the present enforcement and IRA proceedings concerned the Department of Energy's ("Agency") alleged failure to make Carson's November 2000 reassignment to the Oak Ridge Operations Office ("ORO") retroactive to September 1999 as part of the relief granted in Carson I, as well as the resulting failure to consider him for several GS-14 and GS-15 positions at ORO between November 1999 and March 2000.  We heard oral argument on October 4, 2004.  We hold that the Board did not abuse its discretion in denying Carson's present enforcement petition as precluded by his prior enforcement petition, finally dismissed in Carson v. Department of Energy, 88 M.S.P.R. 260 (2001) ("Carson II"), or in dismissing Carson's present IRA appeal for failure to show Agency retaliation.  We therefore affirm.

BACKGROUND

Carson had been employed as a General Engineer, GS-14, also referred to as an "EH Resident," at the Office of Environment, Safety and Health ("EH") in the Department of Energy's facility in Oak Ridge, Tennessee.  Carson's professional duties entailed occupational and nuclear safety oversight.  Between 1991 and 1997, Carson made more than twenty disclosures of specific dangers to public safety and health.  The Agency, in turn, (1) gave Carson an "exceeds fully successful" rather than an "outstanding" rating in 1995, (2) removed his surveillance duties in mid-1997, and, finally, (3) reassigned him to EH Headquarters in Germantown, Maryland, effective December 1997.

---

[2]  This decision, No. AT-1221-01-0025-W-2, became final on July 9, 2003, when the Board denied Carson's petition for review.  See 5 C.F.R. § 1201.113(b).

A.    Carson's First Individual Right of Action (Carson I)

Carson challenged each of these personnel actions in separate IRA appeals, filed between 1996 and 1998, alleging Agency reprisal for his protected disclosures.[3] On April 29, 1999, the Administrative Judge ("AJ") decided that the Agency had retaliated against Carson for making disclosures protected under the Whistleblower Protection Act ("WPA") and ordered interim relief pending possible review by the full Board. As part of that relief, the Agency was to "return to the appellant the full range of duties and work assignments consistent with his position description and past assignments." Carson was thus reassigned to his former position as EH Resident at the EH facility in Oak Ridge.

In July 1999, however, the Agency eliminated the entire EH Resident Program. On August 31, 1999, Carson thus wrote ORO management that he was "open to exploring a detail to [ORO]." Carson added:

> I've told my management that <u>I won't consider a transfer to Oak Ridge until the legal issues surrounding my employment in DOE are more resolved</u> — specifically that the MSPB rules on DOE's June Petition for Review (PFR) of Judge Miller's initial decision. DOE's PFR is without legal merit, but given the complexity of the case, <u>it could well be next Summer</u> before the Board disposes of it.

(Emphases added).[4]

On September 9, 1999, EH informed Carson that according to ORO management, "an offer for you to join their staff would not be forthcoming." Instead, Carson would once again be transferred to EH Headquarters in Germantown, Maryland

---

[3] These three cases were joined for processing and hearing before the Board.

[4] Carson closed by warning that "if voluntary approach to sharing interests and objectives in my being detailed to Oak Ridge doesn't work . . . I can file an informal grievance, per DOE Order 3771.1 chapter II section 3(b)" requesting such a detail.

the following summer. The Agency later modified the transfer, allowing Carson to telecommute from his home in Knoxville, Tennessee.

On February 3, 2000, the AJ's Initial Decision in Carson's consolidated IRA appeals became final, when the full Board denied the Agency's petition for review. Carson v. Dep't of Energy, 85 M.S.P.R. 171 (2000).

On February 25, 2000, Carson applied for a vacant GS-15 position at ORO; Carson had previously, and unsuccessfully, applied for two vacant GS-15 positions at ORO in November 1999. The Notices of Vacancy for all three GS-15 positions specified that only current ORO employees were eligible to apply.[5] ORO denied Carson's application because he was employed at EH Headquarters in Maryland, not ORO in Tennessee.

B.    Carson's First Action to Enforce Carson I (Carson II)

On March 2, 2000, Carson wrote to ORO management requesting reassignment to a GS-14 (or higher) position there, and threatening to petition for enforcement of the Board's decision in Carson I if his request was denied. Carson made good on his threat the very same day by filing a petition to enforce, alleging that his second reassignment from Oak Ridge to Germantown constituted noncompliance with the relief ordered in Carson I.

In an October 4, 2000 "Recommendation," the AJ granted Carson's petition, stating:

> Because the agency has failed to prove that it could not have placed the
> appellant in a position at his grade level within the Oak Ridge, Tennessee,

---

[5] In addition to the three GS-15 positions at ORO, Carson also complains of his nonselection for a GS-14, Supervisory Engineer, position. The date of Carson's application for that position is, however, unclear.

commuting area, I find that the agency is not in compliance with the Board's Final Order. Since more than half of the similarly situated employees were placed within their commuting area, and the record reflects that there were vacant GS-14 positions to which the appellant might have been assigned, I find that directing the appellant's reassignment to Germantown, Maryland, is not placing him "as nearly as possible" in the position he would have been in but for the unlawful retaliation.

The AJ thus ordered the Agency to "identify all GS-14 positions in the Oak Ridge, Tennessee, commuting area which are currently vacant or which were vacant and filled on or after the date that the EH Resident program was abolished," and to assign Carson to the position that most closely complied with the Board's order in Carson I. Accepting the AJ's Recommendation, the Agency reassigned Carson to the position of Technical Facility Representative, GS-14, in a newly-formed organization within ORO. The reassignment became effective as of November 2000.

On April 26, 2001, the full Board determined the Agency had satisfied the AJ's Recommendation. Carson II, 88 M.S.P.R. at 260. The Board explained that its prior decision in Carson I

directed the agency to place the appellant in a position with the full range of duties and work assignments consistent with his position description and past assignments. While [Carson I] does not specifically require the appellant's placement in his former position, it does contemplate placement in a position with the same duties and assignments as those of his former position of EH Site Resident. . . . We find that the agency has demonstrated that overriding circumstances precluded it from placing the appellant in the same type of position that he had previously occupied because the entire EH Site Resident Program was abolished.

Id. at ¶ 6 (internal citation omitted). Finding the range of duties and work assignments in Carson's new position at ORO "similar, though not precisely the same, as his former responsibilities and assignments," id. at ¶ 8, the Board concluded that the Agency had complied with Carson I and dismissed Carson's petition for enforcement as moot.

03-3295, -3298                        5

The Board also rejected Carson's additional claim of noncompliance based on his rejection for three GS-15 positions at ORO as "not appropriately before the Board in this compliance proceeding." Id. at ¶ 11. "The appellant himself stated that he filed an Individual Right of Action appeal with regard to three rejected applications for GS-15 positions. Accordingly, we will not consider the matter here." Id.

C.    Carson's Present Individual Right of Action

On October 3, 2000, Carson filed a second IRA,[6] alleging that the Agency's failure to transfer him to ORO effective in September 1999 and its subsequent failure to consider and/or select him for any one of the three GS-15 positions at ORO for which he applied in November 1999 and February 2000 constituted reprisal for his whistleblowing activity.

On February 27, 2002, the AJ dismissed the second IRA appeal as Carson failed to prove that "the reason he was not transferred to ORO sooner was in retaliation for his whistleblowing." The AJ explained that "the organization that failed to reassign him was not the organization that took retaliatory action against him. At best, the appellant demonstrated that there was a lack of communication between himself and ORO." Having found no retaliatory motive, the AJ declined to further address Carson's resulting nonselection for the three GS-15 positions at ORO. The AJ did note, however, that Carson was not entitled to priority consideration for GS-15 positions, as (1) he was not subject to a reduction in force, and (2) he could not invoke the transfer preference statute, 5 U.S.C. § 3352. With respect to the latter, the AJ explained that "[t]he statute

---

    [6] The Board's statement in Carson II that Carson had "filed an Individual Right of Action appeal with regard to three rejected applications for GS-15 positions" referred to this second IRA.

provides that a whistleblower is entitled to a transfer preference to positions of the 'same status and tenure as the position of such employee on the date of applying for a transfer . . . .'" Because Carson "was attempting to obtain a promotion by invoking that statute, his claim [was] unavailing."

### D.  Carson's Present Action to Enforce Carson I

On March 23, 2002, Carson filed a second petition to enforce Carson I, this time claiming the Agency unlawfully failed to consider his application for two GS-14 positions at ORO.[7]  The AJ denied Carson's petition on May 29, 2002, explaining that (1) the Board's final order in Carson I did not require the Agency to consider Carson's application for any particular position; and (2) the Board's Final Order in Carson II, Carson's first enforcement action, found the Agency fully in compliance with Carson I.

The Initial Decisions in Carson's present enforcement and IRA proceedings became final on July 7 and July 9, 2003, respectively.  Carson timely appealed both final decisions to this court.  We have jurisdiction under 28 U.S.C. § 1295(a)(9).

### DISCUSSION

The Board's decision must be affirmed unless it is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule or regulation; or unsupported by substantial evidence.  5 U.S.C. § 7703(c) (2000); Carreon v. Office of Pers. Mgmt., 321 F.3d 1128, 1130 (Fed. Cir. 2003).

---

[7]  According to the Initial Decision, Carson's claim was based on nonselection for "two different GS-14 positions."  However, the dates Carson applied for these GS-14 vacancies, as well as the titles of those positions, are not in the record before us.

I.     Petition to Enforce

Carson argues that the Board erred in refusing to consider his claims for retroactive reassignment to ORO and the resulting nonselection for several vacant positions there as part of his second petition to enforce Carson I.  Carson insists that these noncompliance claims are not precluded by the Board's Final Order in Carson II, as the precise issues — the Agency's failure to make his November 2000 reassignment to ORO retroactive to September 1999 and his ensuing nonconsideration for ORO vacancies — were not before the Board in that first enforcement proceeding.

Accordingly, Carson asks that his reassignment to ORO now be made retroactive to September 1999 and that he now receive priority consideration for the three GS-15 positions and one GS-14 position at ORO for which he was not considered in 1999 and 2000.  Carson also asks us to remand so that the Board can determine whether he would have been selected for any of the positions at ORO for which he applied in November 1999 and February 2000.

The government responds that Carson's challenges to the scope of relief afforded by Carson I should have been raised in an appeal to this court from that decision, which became final in February 2000.  Alternatively, the government argues, Carson should have raised these instances of alleged noncompliance in his first petition to enforce.  As such, the government asserts that Carson's claims are untimely and precluded by res judicata.

We agree with the government that the noncompliance claims raised in Carson's second enforcement action are barred by Carson II.  Claim preclusion prevents parties from litigating issues that could have been raised in a prior action.  See Federated Dep't

Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981); see also Peartree v. United States Postal Serv., 66 M.S.P.R. 332, 337 (1995).[8]  The doctrine serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."  Allen v. McCurry, 449 U.S. 90, 94 (1980).  This form of res judicata applies if (1) the prior decision was rendered by a forum with competent jurisdiction; (2) the prior decision was a final decision on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases.  Peartree, 66 M.S.P.R. at 337.  Here, all three criteria are satisfied.  Carson II was a final decision, rendered by the full Board, which found the Agency in compliance with the remedial actions prescribed by Carson I.  In other words, Carson II determined that Carson's new position at ORO — effective November 2000 — entailed duties sufficiently similar to those of his prior EH position to

---

[8]  Carson's argument that res judicata does not apply speaks to issue preclusion rather than claim preclusion.  Unlike issue preclusion, which only bars matters actually litigated in a prior proceeding, claim preclusion forecloses matters that, although never litigated or even raised, could have been advanced in an earlier suit.  As the United States Supreme Court has explained,

> [t]he preclusive effects of former adjudication . . . are referred to collectively by most commentators as the doctrine of "res judicata."  Res judicata is often analyzed further to consist of two preclusion concepts:  "issue preclusion" and "claim preclusion."  Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided.  This effect is also referred to as direct or collateral estoppel.  Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.  Claim preclusion therefore encompasses the law of merger and bar.

Migra v. Warren City Sch. Dist. Bd. of Ed., 465 U.S. 75, 77 n.1 (1984) (internal citations omitted).

place him "as nearly as possible" in the position he would have been in but for the Agency's retaliation.

Both Carson II and the decision on his second enforcement petition now before us involved allegations of Agency noncompliance with Carson I. Surely, Carson could have raised the retroactive reassignment and nonselection claims before the Board in his first enforcement proceeding. Indeed, in that action, the AJ directed Carson to identify all new allegations of noncompliance, if any, other than his second transfer to EH Headquarters. The AJ's order was dated August 23, 2000.[9] As of that date, Carson had already applied and been rejected for the vacant GS-14 and GS-15 positions at ORO based on his non-incumbent status. Carson thus could — and should — have properly raised those noncompliance allegations before the AJ in the original enforcement action. He did not. And, although Carson attempted to raise his rejection for several GS-15 positions before the full Board in Carson II, the Board properly declined to review that claim as not adjudicated by the AJ, or, as the Board put it, "not appropriately before [it]." See, e.g., Banks v. Dep't of the Air Force, 4 M.S.P.R. 268, 271 (1980) (the Board will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence).

In sum, the Board's unappealed Final Order in Carson II — that the Agency had complied with the full scope of relief accorded Carson in his original IRA appeal —

---

[9] As the AJ's October 4, 2000 Recommendation noted, "[o]n September 21, 2000, the appellant filed a motion to supplement the record, in which he attempted to raise a new allegation of noncompliance." Denying that motion, the AJ reasoned that "[t]he purpose behind [the] August 23, 2000 Order directing the appellant to identify all of his additional allegations of noncompliance, if any, was precisely to avoid this type of piecemeal litigation."

precludes all claims of noncompliance that could have been raised in his original enforcement action. Stated differently, by failing to raise them in Carson II, Carson waived his present claims.

Although we hold Carson's belated noncompliance claims precluded, we note that they would have failed in any event. Carson I did not provide for retroactive reassignment. Instead, the Agency was simply required to, among other things, "return the appellant to the full range of duties and work assignments consistent with his position description and past assignments." Similarly, the AJ's Recommendation on Carson's initial petition to enforce simply ordered that the Agency "assign the appellant to the position so identified [a GS-14 position in the Oak Ridge commuting area] that most closely complies with the Board's February 3, 2000 Final Order." Neither decision mentioned retroactivity; neither specified ORO as the place of reassignment. While retroactive reassignment to ORO may now appear preferable to Carson, he failed to properly request such a remedy. Carson cannot use successive enforcement petitions to expand the scope of relief afforded by the Board's final decision in Carson I. As the AJ remarked, these proceedings are designed "to protect an appellant from being deprived of Board-ordered relief" rather than referee "every real or perceived grievance between the employee and the agency for years to come."

Accordingly, we conclude that the Board did not abuse its discretion or otherwise err when it denied Carson's second petition for enforcement.

II.     Individual Right of Action

We now turn to the Board's dismissal of Carson's second IRA appeal. Here, Carson faults the Board for focusing on the absence of Agency reprisal rather than on

questions of compliance. Carson argues that the Board erred in requiring that he show retaliatory animus in the Agency's failure to retroactively reassign and treat him as an ORO incumbent for the various GS-15 vacancies, all filled several years ago. The proper inquiry, Carson claims, should have considered whether the Agency was required to treat him as an ORO employee as of September 1999 to comply with the AJ's Recommendation and the Board's Final Order on his first petition for enforcement.

The government counters that the Board's final — and unappealed — decision in Carson II precludes claims for a right to retroactive reassignment raised in this second IRA appeal. The government points out that the Board ruled in Carson II that the Agency had taken all the steps required by Carson I. Because the Agency had fully remedied the retaliatory acts at issue in Carson I, the AJ correctly required Carson to show new Agency retaliation in this second IRA appeal.

We hold that the Board properly dismissed Carson's second IRA for failing to prove Agency retaliation as a contributing factor to the challenged personnel actions. There is a critical difference between a petition for enforcement and an IRA appeal. The first addresses Agency compliance with a final Board order, while the second focuses on alleged Agency retaliation for protected disclosures. The two types of proceedings are not interchangeable. On a petition to enforce, the Agency bears the burden of proving compliance with a final Board order. See Spates v. U. S. Postal Serv., 70 M.S.P.R. 438, 441 (1996). Yet to prevail in an IRA appeal alleging retaliation for protected disclosures under the WPA, the burden falls on the employee to show by a preponderance of the evidence that (1) a protected disclosure was made; and (2) the disclosure was a contributing factor in the adverse personnel action. See 5 U.S.C. §

1221(e)(1) (2005); 5 C.F.R. § 1209.7 (2005); see also Willis v. Dep't of Agric., 141 F.3d 1139, 1143 (Fed. Cir. 1998).

The AJ found the first element met. Acknowledging that Carson had made protected disclosures between 1991 and 1997, the AJ concluded that the "only remaining issues with respect to which the appellant has the burden of proof are to show that his whistleblowing was a contributing factor in the agency's failure to assign him to ORO in the fall of 1999, and its failure to promote him." The AJ thus focused on the second element of Carson's whistleblower claim. After carefully weighing the evidence Carson presented during the hearing on his claim, the AJ found that Carson had failed to show that he was not transferred to ORO retroactively due to Agency retaliation. In fact, Carson had made clear in his August 31, 1999 letter to ORO that he would not accept a permanent transfer to ORO "until the legal issues surrounding [his] employment in DOE [were] more resolved," possibly in summer 2000. In view of this communication, the AJ reasoned that "the appellant did not have any reason to believe he would be transferred into ORO prior to his March 2000 request."

When Carson did, in fact, convey an interest in reassignment to ORO in March 2000, he was informed of ORO's policy of selecting individuals for GS-14 and GS-15 positions solely from within its organization; a criterion for eligibility that was also clearly stated on the vacancy notices for those positions. To this end, ORO's Human Resources Director testified that "competition was limited to ORO at the grade 14 and 15 levels due to the limited number of positions at those grades and the fact that ORO

employees should be given the first shot at competing for positions at those grade levels."[10]

In sum, Carson's transfer to ORO in November 2000 rather than September 1999 was self-inflicted; his nonselection, the result of a legitimate ORO policy. Neither was the product of retaliatory animus, as the AJ correctly found. Certainly, substantial evidence supports this finding. Hence, the AJ properly declined to consider Carson's nonselection for ORO vacancies.

## CONCLUSION

For these reasons, both decisions of the Board are

## AFFIRMED.

---

[10] Carson did not argue before the Board, and does not argue before this court, that ORO's policy of limiting the pool of applications for GS-14 and GS-15 positions to ORO employees was designed to exclude him from competition.

# United States Court of Appeals for the Federal Circuit

03-3295, -3298

JOSEPH P. CARSON,

Petitioner,

v.

DEPARTMENT OF ENERGY,

Respondent.

NEWMAN, <u>Circuit Judge</u>, dissenting.

The issue is the extent to which a whistleblower must be made whole in remediation of retaliatory actions that were taken against him. Is it sufficient to return him to a position similar to the one he held three or four years earlier -- before the retaliation and its consequences -- or is he entitled to remedial action accommodating the lengthy period of litigation and its adverse effects on his employment status and advancement? My colleagues on this panel deny any remedial obligation beyond reinstatement in a position similar to that previously held.

Mr. Carson, after various whistleblowing events, had been retaliated against by being transferred from his employment at Oak Ridge, Tennessee, to the agency's offices at Germantown, Maryland. He was eventually reinstated at Oak Ridge, but had missed

several opportunities to compete for advancement at Oak Ridge. Thus Mr. Carson, although continually prevailing in extensive litigation, was worse off than he would have been had he remained silent about the violations on which he blew the whistle. The question is whether he is entitled to a remedy that could come closer to making him whole, and if so, what remedy is appropriate.

After the agency's initial retaliation by moving him from Oak Ridge to Germantown, Mr. Carson was obliged to litigate for over three years, in order to recover a position similar to the one he held when the retaliation began. The whistleblower law, and the policy underlying this law, require that the whistleblower be made whole, which in turn requires reasonable compensation by the agency for whatever losses were suffered by the whistleblower. In compensation for the lost opportunities for advancement, Mr. Carson asks no more than preferential consideration for future openings for which he is qualified, a remedy that the MSPB recognized in Baxter v. Office of Personnel Management, 44 M.S.P.R. 125, 133 (1990) (a remedy for failure to consider an applicant for past vacancies is to give priority consideration for future vacancies). Denial of any accommodation for this multi-year disadvantage is contrary to the purposes of the whistleblower protection law. Thus I must, respectfully, dissent from the majority's ruling that Mr. Carson is precluded from further relief.

**A**

The three years of legal battles fought by Mr. Carson cannot be discerned from the majority opinion. Mr. Carson had been employed as a safety inspector in the Office of Environment, Safety, and Health at Oak Ridge. Over the years he reported multiple lapses in safety and waste in the nuclear weapons programs. On December 19, 1997 the agency

03-3295, -3298                                    2

issued a letter of admonishment and reassigned him to Germantown, Maryland. Mr. Carson, viewing the reassignment as retaliatory for his adverse disclosures, complained to the Office of Special Counsel. Upon inaction by the Special Counsel, he appealed to the Merit Systems Protection Board.

On April 29, 1999 the administrative judge ruled that the reports were protected under the Whistleblower Protection Act, and ordered the agency to cancel the letter of admonishment and return Mr. Carson to Oak Ridge and the full range of his previously assigned duties. The agency returned Mr. Carson to a different position at Oak Ridge, not reinstating him as a safety inspector. The agency also appealed the AJ's decision to the full Board. While that appeal was pending, the agency eliminated the Office of Environmental, Safety, and Health, and the resident safety inspection positions, including that previously encumbered by Mr. Carson, and again ordered the transfer of Mr. Carson to Germantown. After the full Board in February 2000 upheld the administrative judge's decision in favor of Mr. Carson, Carson v. Dep't of Energy, 85 M.S.P.R. 171 (2000), the agency offered him the choice of telecommuting to Germantown.

Mr. Carson filed a Petition for Enforcement, and the administrative judge ruled on October 5, 2000 that he must be employed at Oak Ridge, not at Germantown. By then, almost three years had elapsed since he was first disciplined for whistleblowing. The agency again appealed to the full Board, and meanwhile placed Mr. Carson in a position at Oak Ridge with duties that appear to be related to those of his prior position and at the same grade GS-14. The full Board found that the agency was now in compliance. Carson v. Dep't of Energy, 88 M.S.P.R. 260 (2001). The Board explicitly declined to consider the

03-3295, -3298                                    3

issue of Mr. Carson's missed opportunities to apply for promotion, stating that this was the subject of a separate proceeding.

The Board apparently was referring to a separate Individual-Right-of-Action appeal filed by Mr. Carson in October 2000, wherein he stated that he was not made whole after the retaliation, because he had been deprived of the opportunity to compete for certain GS-14 and GS-15 positions at Oak Ridge. In that proceeding the administrative judge ruled that Mr. Carson did not meet his burden of proof, finding that the agency's decision not to consider Mr. Carson's applications for certain positions announced in September 1999 was not in retaliation for his past whistleblowing, but was because the positions were available only to incumbent employees of Oak Ridge Operations. Carson v. Dep't of Energy, No. AT1221010025W2 (M.S.P.B. July 9, 2003). This is the decision from which Mr. Carson now appeals.

Mr. Carson recognizes that the positions for which he could not apply have been filled. His argument is that the loss of promotional opportunity was a direct result of the agency's retaliation, and therefore he is worse off than he would have been but for the whistleblowing and its consequences. He asks for priority consideration for future positions for which he is qualified, stating that the intent of the Whistleblower Protection Act is that whistleblowers who suffer retaliation would be made whole. He points out that the statute was designed to overcome the widespread belief that "[u]nless you are in a position to retire or are independently wealthy, don't do it." *Whistleblower Protection Act of 1987: Hearing on S. 508 Before the Senate Subcommittee on Federal Services, Post Office, and Civil Service, Committee on Governmental Affairs*, 100th Cong. 4 (1987) (testimony of Sen. Levin).

03-3295, -3298                                    4

The panel majority rules that Mr. Carson is not entitled to this remedy because on August 31, 1999 he wrote to a supervisor that he would not request transfer to the Oak Ridge Operations office until "the MSPB rules on DOE's June Petition for Review," and on September 8, 1999 a supervisor responded that Oak Ridge Operations would not offer him a position. In November 1999 Mr. Carson applied for several announced positions including two at grade GS-15, and was told that those positions were open only to incumbent employees in the Oak Ridge Operations office. The panel majority holds that if Mr. Carson had requested earlier transfer to this office he could have been an incumbent and could have applied. Perhaps so. However, this does not support a ruling that Mr. Carson had chosen not to be considered for promotion. At most, it supports a ruling that he was still suffering the consequences of his whistleblowing.

Mr. Carson had been out of the promotion chain since late 1997, and was still confronting the agency's appeal of the administrative judge's decision in his favor, when he declined to take a step that he thought would diminish his position on that appeal. His letter of August 31, 1999 cannot of itself sustain the loss of all opportunities for promotion. The remedy for retaliatory agency action is to place the whistleblowing employee as nearly as possible in the position he would have occupied if the retaliation had not occurred. 5 U.S.C. §1221(g)(1)(A)(i); Kerr v. Nat'l Endowment for the Arts, 726 F.2d 730, 733 (Fed. Cir. 1984). Reinstatement to the former position may or may not make the whistleblower whole; the specific circumstances must be considered. Martin v. Dep't of Air Force, 184 F.3d 1366, 1372 (Fed. Cir. 1999).

Mr. Carson states that the Board erroneously held that it was his burden "to show that his whistleblowing was a contributing factor in the agency's failure to assign him to

ORO in the fall of 1999, and in its failure to promote him." Board op. at 6. I agree, for this was both an incorrect statement of the law and a misplacement of the burden of proof. The burden of proof of statutory compliance is on the agency, not the wronged employee. See Briley v. Nat'l Archives & Records Admin., 236 F.3d 1373 (Fed. Cir. 2001) ("If a plaintiff establishes a prima facie case of retaliation for whistleblowing, corrective action must be ordered unless 'the agency demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure.'") (relying inter alia on 5 U.S.C. §1221(e)(2)). Whether or not the agency's failure to assign him to Oak Ridge Operations in the 1999 action was in continued retaliation, if the situation was a consequence of past retaliation then it warrants remedial action. Thus although the panel majority stresses that the agency cannot be faulted for not having assigned Mr. Carson to the Operations office in 1999, the question is not one of fault, but of whether Mr. Carson, due to his whistleblowing, was disadvantaged in employment.

The agency points to the difficulty of reconstructing the competition for past positions, and stresses that Mr. Carson might not have been selected for the 1999 promotion. I agree that it may not be easy to craft a remedy that would reasonably make Mr. Carson whole. However, it is incorrect to foreclose all remedy when, *prima facie*, Mr. Carson experienced the specified lost opportunities spanning the entire period of retaliation and litigation. The burden of full compliance is on the agency that retaliated, and doubts must be resolved in favor of the wronged employee. I would remand to the Board for determination, upon the correct law and placement of the burden of proof, the question of whether Mr. Carson lost promotion opportunities and, if so, to fashion a remedy in reasonable fulfilment of the statute.

03-3295, -3298                                    6

**B**

My colleagues also hold that Mr. Carson is barred from raising this issue by *res judicata*. However, this aspect was not previously decided. The Board expressly reserved the question of lost opportunities, stating that "the appellant's additional claim that the agency is in noncompliance because it rejected his application for GS-15 positions is not appropriately before the Board in this compliance proceeding." <u>Carson</u>, 88 M.S.P.R. at 264-65. Thus, this claim was properly before the Board, and the appeal is properly before us.