Opinion for the court filed by Chief Judge MICHEL. Dissenting opinion filed by Circuit Judge NEWMAN.
MICHEL, Chief Judge.
Joseph P. Carson appeals two final decisions of the Merit Systems Protection Board (“Board”), namely; (1) the May 29, 2002 decision[1] denying his petition' for enforcement of the Board’s final decision in his first Individual Right of Action (“IRA”) appeal in Carson v. Department of Energy, Nos. AT-1221-96-0948-W-3, AT-1221-98-250-W-1, AT-1221-98-623-W-1 (Apr. 29, 1999) (“Carson I ”), and (2) the February 27, 2002 decision dismissing his second IRA for failing to prove retaliatory animus.[2] Both the present enforcement and IRA proceedings concerned the Department of Energy’s (“Agency”) alleged failure to make Carson’s November 2000 reassignment to the Oak Ridge Operations Office (“ORO”) retroactive to September 1999 as part of the relief granted in Carson I, as well as the resulting failure to consider him for several GS-14 and GS-15 positions at ORO between November 1999 and March 2000. We heard oral argument on October 4, 2004. We hold that the Board did not abuse its discretion in denying Carson’s present enforcement petition as precluded by his prior enforcement petition, finally dismissed in Carson v. Department of Energy, 88 M.S.P.R. 260 (2001) (“Carson II ”), or in dismissing Carson’s present IRA appeal for failure to show Agency retaliation. We therefore affirm.
BACKGROUND
Carson had been employed as a General Engineer, GS-14, also referred to as an “EH Resident,” at the Office of Environment, Safety and Health (“EH”) in the Department of Energy’s facility in Oak Ridge, Tennessee. Carson’s professional duties entailed occupational and nuclear safety oversight. Between 1991 and 1997, Carson made more than twenty disclosures of specific dangers to public safety and *1372 health. The Agency, in turn, (1) gave Carson an “exceeds fully successful” rather than an “outstanding” rating in 1995, (2) removed his surveillance duties in mid-1997, and, finally, (3) reassigned him to EH Headquarters in Germantown, Maryland, effective December 1997.
A. Carson’s First Individual Right of Action (Carson I)
Carson challenged each of these personnel actions in separate IRA appeals, filed between 1996 and 1998, alleging Agency reprisal for his protected disclosures.[3] On April 29, 1999, the Administrative Judge (“AJ”) decided that the Agency had retaliated against Carson for making disclosures protected under the Whistleblower Protection Act (“WPA”) and ordered interim relief pending possible review by the full Board. As part of that relief, the Agency was to “return to the appellant the full range of duties and work assignments consistent with his position description and past assignments.” Carson was thus reassigned to his former position as EH Resident at the EH facility in Oak Ridge.
In July 1999, however, the Agency eliminated the entire EH Resident Program. On August 31, 1999, Carson thus wrote ORO management that he was “open to exploring a detail to [ORO].” Carson added:
I’ve told my management that I won’t consider a transfer to Oak Ridge until the legal issues surrounding my employment in DOE are more resolved— specifically that the MSPB rules on DOE’s June Petition for Review (PFR) of Judge Miller’s initial decision. DOE’s PFR is without legal merit, but given the complexity of the case, it could well be next Summer before the Board disposes of it.
(Emphases added).[4]
On September 9, 1999, EH informed Carson that according to ORO management, “an offer for you to join their staff would not be forthcoming.” Instead, Carson would once again be transferred to EH Headquarters in Germantown, Maryland the following summer. The Agency later modified the transfer, allowing Carson to telecommute from his home in Knoxville, Tennessee.
On February 3, 2000, the AJ’s Initial Decision in Carson’s consolidated IRA appeals became final, when the full Board denied the Agency’s petition for review. Carson v. Dep’t of Energy, 85 M.S.P.R. 171 (2000).
On February 25, 2000, Carson applied for a vacant GS-15 position at ORO; Carson had previously, and unsuccessfully, applied for two vacant GS-15 positions at ORO in November 1999. The Notices of Vacancy for all three GS-15 positions specified that only current ORO employees were eligible to apply.[5] ORO denied Carson’s application because he was employed at EH Headquarters in Maryland, not ORO in Tennessee.
B. Carson’s First Action to Enforce Carson I (Carson II)
On March 2, 2000, Carson wrote to ORO management requesting reassignment to a GS-14 (or higher) position there, and *1373 threatening to petition for enforcement of the Board’s decision in Carson I if his request was denied. Carson made good on his threat the very same day by filing a petition to enforce, alleging that his second reassignment from Oak Ridge to German-town constituted noncompliance, with the relief ordered in Carson I.
In an October 4, 2000 “Recommendation,” the AJ granted Carson’s petition, stating:
Because the agency has failed to prove that it could not have placed the appellant in a position at his grade level within the Oak Ridge, Tennessee, commuting area, I find that the agency is not in compliance with the Board’s Final Order. Since more than half of the similarly situated employees were placed within their commuting area, and the record reflects that there were vacant GS-14 positions to which the appellant might have been assigned, I find that directing the appellant’s reassignment to Germantown, Maryland, is not placing him “as nearly as possible” in the position he would have been in but for the unlawful retaliation.
The AJ thus ordered the Agency to “identify all GS-14 positions in the Oak Ridge, Tennessee, commuting area which are currently vacant or which were vacant and filled on or after the date that the EH Resident program was abolished,” and to assign Carson to the position that most closely complied with the Board’s order in Carson I. Accepting the AJ’s Recommendation, the Agency reassigned Carson to the position of Technical Facility Representative, GS-14, in a newly-formed organization within ORO. The reassignment became effective as of November 2000.
On April 26, 2001, the full Board- determined the Agency had satisfied the AJ’s Recommendation. Carson II, 88 M.S.P.R. at 260. The. Board explained that its prior decision in Carson I
directed 'the agency to place the appellant in a position with the full range of duties and work assignments consistent with his position description and past assignments. While [Carson /] does not specifically require the appellant’s placement in his former position, it does contemplate placement in a position with the same duties and assignments as those of his former position of EH Site Resident.... We find that the agency has demonstrated that overriding circumstances precluded it from placing the appellant in the same type of position that he had previously occupied because the entire EH Site Resident Program was. abolished.
Id. at ¶ 6 (internal citation omitted). Finding the range of duties and work assignments in Carson’s new position at ORO “similar, though not precisely the same, as his former responsibilities and assignments,” id. at ¶ 8, the Board concluded that the Agency had complied with Carson /■'and dismissed ■ Carson’s petition for enforcement as moot.
The Board also rejected Carson’s additional claim of noncompliance based on his rejection for three GS-15 positions at ORO as “not appropriately before the Board in this compliance proceeding.” Id. at ¶ 11. “The appellant himself stated that he filed an Individual Right of Action appeal with regard to three rejected applications for GS-15 positions. Accordingly, we will not consider the matter here.” Id.
C. Carson’s Present Individual Right of Action
On October 3, 2000, Carson filed a second IRA,[6] alleging that the Agency’s fail *1374 ure to transfer him to ORO effective in September 1999 and its subsequent failure to consider and/or select him for any one of the three GS-15 positions at ORO for which he applied in November 1999 and February 2000 constituted reprisal for his whistleblowing activity.
On February 27, 2002, the AJ dismissed the second IRA appeal as Carson failed to prove that “the reason he was not transferred to ORO sooner was in retaliation for his whistleblowing.” The AJ explained that “the organization that failed to reassign him was not the organization that took retaliatory action against him. At best, the appellant demonstrated that there was a lack of communication between himself and ORO.” Having found no retaliatory motive, the AJ declined to further address Carson’s resulting nonselection for the three GS-15 positions at ORO. The AJ did note, however, that Carson was not entitled to priority consideration for GS-15 positions, as (1) he was not subject to a reduction in force, and (2) he could not invoke the transfer preference statute, 5 U.S.C. § 3352. With respect to the latter, the AJ explained that “[t]he statute provides that a whistleblower is entitled to a transfer preference to positions of the ‘same status and tenure as the position of such employee on the date of applying for a transfer ....’” Because Carson “was attempting to obtain a promotion by invoking that statute, his claim [was] unavailing.”
D. Carson’s Present Action to Enforce Carson I
On March 23, 2002, Carson filed a second petition to enforce Carson I, this time claiming the Agency unlawfully failed to consider his application for two GS-14 positions at ORO.[7] The AJ denied Carson’s petition on May 29, 2002, explaining that (1) the Board’s final order in Carson I did not require the Agency to consider Carson’s application for any particular position; and (2) the Board’s Final Order in Carson II, Carson’s first enforcement action, found the Agency fully in compliance with Carson I.
The Initial Decisions in Carson’s present enforcement and IRA proceedings became final on July 7 and July 9, 2003, respectively. Carson timely appealed both final decisions to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9).
DISCUSSION
The Board’s decision must be affirmed unless it is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule or regulation; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); Carreon v. Office of Pers. Mgmt., 321 F.3d 1128, 1130 (Fed.Cir.2003).
I. Petition to Enforce
Carson argues that the Board erred in refusing to consider his claims for retroactive reassignment to ORO and the resulting nonselection for several vacant positions there as part of his second petition to enforce Carson I. Carson insists that these noncompliance claims are not precluded by the Board’s Final Order in Carson II, as the precise issues — the Agency’s failure to make his November 2000 reassignment to ORO retroactive to September 1999 and his ensuing nonconsideration for ORO vacancies — were not before the Board in that first enforcement proceeding.
*1375 Accordingly, Carson asks that his reassignment to ORO now be made retroactive to September 1999 and that he now receive priority consideration for the three GS-15 positions and one GS-14 position at ORO for which he was not considered in 1999 and 2000. Carson also asks us to remand so that the Board can determine whether he would have been selected for any of the positions at ORO for which he applied in November 1999 and February 2000.
The government responds that Carson’s challenges to the scope of relief afforded by Carson I should have been raised in an appeal to this court from that decision, which became final in February 2000. Alternatively, the government argues, Carson should have raised these instances of alleged noncompliance in his first petition to enforce. As such, the government asserts that Carson’s claims are untimely and precluded by res judicata.
We agree with the government that the noncompliance claims raised in Carson’s second enforcement action are barred by Carson II. Claim preclusion prevents parties from litigating issues that could have been raised in a prior action. See Federated Dep’t Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); see also Peartree v. United States Postal Serv., 66 M.S.P.R. 332, 337 (1995).[8] The doctrine serves to “relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.” Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). This form of res judicata applies if (1) the prior decision was rendered by a forum with competent jurisdiction; (2) the prior decision was a final decision on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases. Peartree, 66 M.S.P.R. at 337. Here, all three criteria are satisfied. Carson II was a final decision, rendered by the full Board, which found the Agency in compliance with the remedial actions prescribed by Carson I. In other words, Carson II determined that Carson’s new position at ORO' — effective November 2000 — entailed duties sufficiently similar to those of his prior EH position to place him “as nearly as possible” in the position he would have been in but for the Agency’s retaliation.
Both Carson II and the decision on his second enforcement petition now before us involved allegations of Agency noncompliance with Carson I. Surely, Carson could have raised the retroactive reassignment and nonselection claims before the Board in his first enforcement proceeding. Indeed, in that action, the AJ directed Carson to identify all new allegations of noncompliance, if any, other than his second *1376 transfer to EH Headquarters. The AJ’s order was dated August 23, 2000.[9] As of that date, Carson had already applied and been rejected for the vacant GS-14 and GS-15 positions at ORO based on his non-incumbent status. Carson thus could— and should — have properly raised those noncompliance allegations before the AJ in the original enforcement action. He did not. And, although Carson attempted to raise his rejection for several GS-15 positions before the full Board in Carson II, the Board properly declined to review that claim as not adjudicated by the AJ, or, as the Board put it, “not appropriately before [it].” See, e.g., Banks v. Dep’t of the Air Force, 4 MSPB 342, 4 M.S.P.R. 268, 271 (1980) (the Board will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party’s due diligence).
In sum, the Board’s unappealed Final Order in Carson II — that the Agency had complied with the full scope of relief accorded Carson in his original IRA appeal — -precludes all claims of noncompliance that could have been raised in his original enforcement action. Stated differently, by failing to raise them in Carson II, Carson waived his present claims.
Although we hold Carson’s belated noncompliance claims precluded, we note that they would have failed in any event. Carson I did not provide for retroactive reassignment. Instead, the Agency was simply required to, among other things, “return the appellant to the full range of duties and work assignments consistent with his position description and past assignments.” Similarly, the AJ’s Recommendation on Carson’s initial petition to enforce simply ordered that the Agency “assign the appellant to the position so identified [a GS-14 position in the Oak Ridge commuting area] that most closely complies with the Board’s February 3, 2000 Final Order.” Neither decision mentioned retroactivity; neither specified ORO as the place of reassignment. While retroactive reassignment to ORO may now appear preferable to Carson, he failed to properly request such a remedy. Carson cannot use successive enforcement petitions to expand the scope of relief afforded by the Board’s final decision in Carson I. As the AJ remarked, these proceedings are designed “to protect an appellant from being deprived of Board-ordered relief’ rather than referee “every real or perceived grievance between the employee and the agency for years to come.”
Accordingly, we conclude that the Board did not abuse its discretion or otherwise err when it denied Carson’s second petition for enforcement.
II. Individual Right of Action
We now turn to the Board’s dismissal of Carson’s second IRA appeal. Here, Carson faults the Board for focusing on the absence of Agency reprisal rather than on questions of compliance. Carson argues that the Board erred in requiring that he show retaliatory animus in the Agency’s failure to retroactively reassign and treat him as an ORO incumbent for the various GS-15 vacancies, all filled several years ago. The proper inquiry, Carson claims, should have considered whether the Agen *1377 cy was required to treat him as an ORO employee as of September 1999 to comply with the AJ’s Recommendation and the Board’s Final Order on his first petition for enforcement.
The government counters that the Board’s final' — -and unappealed — decision in Carson II precludes claims for a right to retroactive reassignment raised in this second IRA appeal. The government points out that the Board ruled in Carson II that the Agency had taken all the steps required by Carson I. Because the Agency had fully remedied the retaliatory acts at issue in Carson I, the AJ correctly required Carson to show new Agency retaliation in this second IRA appeal.
We hold that the Board properly dismissed Carson’s second IRA for failing to prove Agency retaliation as a contributing factor to the challenged personnel actions. There is a critical difference between a petition for enforcement and an IRA appeal. The first addresses Agency compliance with a final Board order, while the second focuses on alleged Agency retaliation for protected disclosures. The two types. of proceedings are not interchangeable. On a petition to enforce, the Agency bears the burden of proving compliance with a final Board order. See Spates v. U.S. Postal Serv., 70 M.S.P.R. 438, 441 (1996). Yet to prevail in an IRA appeal alleging retaliation for protected disclosures under the WPA, the burden falls on the employee to show by a preponderance of the evidence that (1) a protected disclosure was made; and (2) the disclosure was a contributing factor in the adverse personnel action. See 5 U.S.C. § 1221(e)(1) (2005); 5 C.F.R. § 1209.7 (2005); see also Willis v. Dep’t of Agric., 141 F.3d 1139, 1143 (Fed.Cir.1998).
The AJ found the first element met. Acknowledging that Carson had made protected disclosures between 1991 and 1997, the AJ concluded that the “only remaining issues with respect to which the appellant has the burden of proof are to show that his whistleblowing was a contributing factor in the agency’s failure to assign him to ORO in the fall of 1999, and its failure to promote him.” The AJ thus focused on the second element of Carson’s whistle-blower claim. After carefully weighing the evidence Carson presented- during the hearing on his claim, the AJ found that Carson had failed to show that he was not transferred to ORO retroactively due to Agency retaliation. In fact, Carson had made clear in his August 31, 1999 letter to ORO that he would not accept a permanent transfer to ORO “until the legal issues surrounding [his] employment in DOE [were] more resolved,” possibly in summer 2000. In view of this communication, the AJ reasoned that “the appellant did not have any reason to believe' he would be transferred into ORO prior to his March 2000 request.”
When Carson did, in fact, convey an interest in reassignment, to ORO in March 2000, he was informed of ORO’s policy of selecting individuals for GS-14 and GS-15 positions, solely from within its organization; a criterion for eligibility that was also clearly stated on the vacancy notices for those positions. To this end, ORO’s Human Resources Director testified that “competition was limited to ORO at the grade 14 and 15 levels due to the limited number of positions at those grades and the fact that ORO employees should be given the first shot at competing for positions at those grade levels.”[10]
*1378 In sum, Carson’s transfer to ORO in November 2000 rather than September 1999 was self-inflicted; his nonselection, the result of a legitimate ORO policy. Neither was the product of retaliatory animus, as the AJ correctly found. Certainly, substantial evidence supports this finding. Hence, the AJ properly declined to consider Carson’s nonselection for ORO vacancies.
CONCLUSION
For these reasons, both decisions of the Board are

AFFIRMED.

. This decision,. Nos. AT-1221-98-0250-C-5, AT-1221-98-623-C-5, AT-1221-96-0948-C-5, became final on July 7, 2003, when the Board denied Carson's petition for review. See 5 C.F.R. § 1201.113(b).

. This decision, No. AT-1221-01-0025-W-2, became final on July 9, 2003, when the Board denied Carson’s petition for review. See 5 C.F.R. § 1201.113(b).

. These three cases were joined for processing and hearing before the Board.

. Carson closed by warning that "if voluntary approach to sharing interests and objectives in my being detailed to Oak Ridge doesn't work ... I can file an informal grievance, per DOE Order 3771.1 chapter II section 3(b)” requesting such a detail.

.In addition to the three GS-15 positions at ORO, Carson also complains of his nonselection for a GS-14, Supervisory Engineer, position. The date of Carson's application for that position is, however, unclear.

. The Board’s statement in Carson II that Carson had "filed an Individual Right of Action appeal with regard to three rejected applications for GS-15 positions” referred to this second IRA.

. According to the Initial Decision, Carson's claim was based on nonselection for "two different GS-14 positions.” However, the dates Carson applied for these GS-14 vacancies, as well as the titles of those positions, are not in the record before us.

. Carson’s argument that res judicata does not apply speaks to issue preclusion rather than claim preclusion. Unlike issue preclusion, which only bars matters actually litigated in a prior proceeding, claim preclusion forecloses matters that, although never litigated or even raised, could have been advanced in an earlier suit. As the United States Supreme Court has explained,
[t]he preclusive effects of former adjudication ... are referred to collectively by most commentators as the doctrine of “res judi-cata.” Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion” and “claim preclusion.” Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect is also referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar.
Migra v. Warren City Sch. Dist. Bd. of Ed., 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (internal citations omitted).

. As the AJ's October 4, 2000 Recommendation noted, "[o]n September 21, 2000, the appellant filed a motion to supplement the record, in which he attempted to raise a new allegation of noncompliance.'' Denying that motion, the AJ reasoned that "[t]he purpose behind [the] August 23, 2000 Order directing the appellant to identify all of his additional allegations of noncompliance, if any, was precisely to avoid this type of piecemeal litigation.”

. Carson did not argue before the Board, and does not argue before this court, that ORO's policy of limiting the pool of applications for GS-14 and GS-15 positions to ORO employees was designed to exclude him from competition.