Gonzalo **GARCIA CARRANZA,** Plaintiff,

v.

The **UNITED STATES,** Defendant.

No. 04–1394C.

United States Court of Federal Claims.

July 29, 2005.

Gonzalo Garcia Carranza, Fort Worth, Texas, pro se.

Roger Allen Hipp, United States Department of Justice, Washington, D.C., for defendant.

### MEMORANDUM OPINION AND ORDER

BRADEN, Judge.

### RELEVANT FACTS AND PROCEDURAL BACKGROUND [1]

**A. Proceedings In The United States District Court For The Northern District Of Georgia, Gainesville Division, The United States District Court For The Southern District Of Texas, McAllen Division, And The United States Court Of Appeals For The Eleventh Circuit.**

On March 16, 2001, Plaintiff Gonzalo Garcia Carranza ("Plaintiff"), who is proceeding *pro se* before the United States Court of Federal Claims, was found guilty by a jury in the United States District Court for the Northern District of Georgia, Gainesville Division, of conspiracy to possess with intent to distribute a methamphetamine, pursuant to 21 U.S.C. §§ 841(b)(1)(A)(viii), 846. *See*

*United States v. Gonzalo Garcia Carranza, et al.,* No. 2:00–CR–00032–WCO–SSC–ALL (N.D.Ga. Mar. 16, 2001) (Verdict of Jury of Guilty). Plaintiff was found not guilty of possession of a controlled substance with intent to distribute, pursuant to 21 U.S.C. § 841. The jury also considered charges of criminal forfeiture, pursuant to 21 U.S.C. § 881, concerning $59,920 found by the Federal Bureau of Investigation in Plaintiff's hotel room, following arrest. *See* Compl. Ex. 3, 4. The jury found these monies were not proceeds from a criminal conspiracy. *Id.*

On April 20, 2001, the Honorable William C. O'Kelley, Senior United States District Judge for the Northern District of Georgia, Gainesville Division, sentenced Plaintiff to 240 months in the custody of the United States Bureau of Prisons, five years of supervised release after incarceration, and levied a $100,000 fine, due and payable immediately, as well as a $100 special assessment. *See* Compl. Ex. 5. On April 30, 2001, Plaintiff filed a Notice of Appeal of the conviction and sentence to the United States Court of Appeals for the Eleventh Circuit. *See United States v. Gonzalo Garcia Carranza, et al.,* No. 2:00–CR–00032–WCO–SSC–ALL (N.D.Ga. Mar. 16, 2001) (Notice of Appeal).

On June 20, 2001, an Assistant United States Attorney sent a letter to the United States Marshal Service asserting a common law offset of the $59,920 found in Plaintiff's hotel room against the $100,000 fine levied in connection with Plaintiff's criminal conspiracy conviction. *See* Pl.App. at A–18.

On January 24, 2002, Plaintiff's criminal conviction and sentence, including the fine and special assessment, were affirmed by the United States Court of Appeals for the Eleventh Circuit. *See United States v. Gonzalo Garcia Carranza,* 31 Fed.Appx. 930 (11th

---

1. A portion of the relevant facts recited herein were derived from: the docket of the United States Court of Appeals for the Eleventh Circuit; the United States District Court for the Northern District of Georgia, Gainesville Division; and the United States District Court for the Southern District of Texas, McAllen Division. Other relevant facts were derived from: Plaintiff's August 27, 2004 Complaint ("Compl.") and Exhibits ("Compl.Ex. ___."); Defendant's December 10,

2004 Motion to Dismiss ("Gov't Mot. to Dismiss"); Plaintiff's January 21, 2005 Motion to Deny Defendant's Motion to Dismiss and Motion to Set Discovery Schedule and Trial Date, Or In the Alternative, [To] Issue Judgment in Favor of the Plaintiff ("Pl.Response"), together with Appendix ("Pl.App."); Defendant's March 7, 2005 Reply Brief ("Gov't Reply"); Plaintiff's April 19, 2005 Rebuttal Brief ("Pl.Rebuttal").

Cir.2002), *cert. denied*, 537 U.S. 862, 123 S.Ct. 246, 154 L.Ed.2d 103 (2002).

On July 10, 2003, Plaintiff returned to the United States District Court for the Northern District of Georgia, Gainesville Division, to file a Motion for Return of Property, pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure.[2] On August 28, 2003, Judge O'Kelley promptly denied that motion. *See United States v. Gonzalo Garcia Carranza, et al.*, No. 2:00–CR–00032–WCO–SSC–ALL (N.D.Ga. Aug. 28, 2003) (Order Denying Motion for Return of Property). On November 6, 2003, Plaintiff also filed a Notice of Appeal of the August 28, 2003 Order. *See United States v. Gonzalo Garcia Carranza, et al.*, No. 2:00–CR–00032–WCO–SSC–ALL (N.D.Ga. Nov. 6, 2003) (Notice of Appeal). On November 10, 2003, the United States Court of Appeals for the Eleventh Circuit docketed Plaintiff's appeal. *See United States v. Gonzalo Garcia Carranza*, No. 03–15679–BB (11th Cir. Nov. 10, 2003) (Docketing—Regular Notice).

On May 15, 2003, Plaintiff also filed an "Original Complaint" in the United States District Court for the Southern District of Texas, McAllen Division, alleging that Plaintiff's constitutional rights under the Fourth and Fifth Amendments to the United States Constitution were violated by an illegal search and seizure and illegal detention in Georgia and also reasserted a claim for the return of the $59,920 seized from Plaintiff's hotel room in Gainesville, Georgia and the return of the $5,000 criminal forfeiture bond. *See Gonzalo Carranza Garcia v. W.P. Weller, et al.*, No. M–03–116 (S.D.Tex. May 15, 2003) (Plaintiff's Original Complaint).[3] In this action, various officers involved in Plaintiff's arrest in Gainesville, Georgia, were named as defendants. *Id.* On December 29, 2003, the Honorable Dorina Ramos, United States Magistrate Judge for the Southern

District of Texas, McAllen Division, transferred Plaintiff's May 15, 2003 Complaint, No. M–03–116, to the United States District Court for the Northern District of Georgia, Gainesville Division, because all of the relevant events giving rise to the claims asserted therein occurred in Georgia and most, if not all, of the fact witnesses were located there. *See Gonzalo Carranza Garcia v. W.P. Weller, et al.*, No. M–03–116 (S.D.Tex. Dec. 29, 2003) (Memorandum and Order for Transfer). On January 5, 2004, the case was transferred to and docketed by the United States District Court for the Northern District of Georgia, Gainesville Division. *See Gonzalo Carranza Garcia v. W.P. Weller, et al.*, No. 2:04–CV–00001–WCO (N.D.Ga. Jan. 5, 2004) (Transfer Order/Complaint).

On June 14, 2004, Judge O'Kelley issued an Order that dismissed all of Plaintiff's claims in the May 5, 2003 "Original Complaint," transferred by the United States District Court for the Southern District of Texas, McAllen Division, except one claim regarding $900 allegedly taken by the enforcement authorities at the time of Plaintiff's arrest. *See Gonzalo Carranza Garcia v. United States*, No. 2:04–CV–001–WCO, slip op. at 6–9 (N.D. Ga. June 14, 2004) (Order Granting Motion to Dismiss). On this occasion, Judge O'Kelley properly dismissed Plaintiff's claims regarding the $59,920 and the $5,000 bond as frivolous. *Id.* at 6. On July 21, 2004, Judge O'Kelley also dismissed as frivolous Plaintiff's claim concerning the $900 because Plaintiff failed to amend the "Original Complaint," within the time required by the June 14, 2004 Order. *See Gonzalo Carranza Garcia v. United States*, No. 2:04–CV–001–WCO (N.D.Ga. July 21, 2004) (Order Dismissing the Case in Its Entirety). Plaintiff did not appeal Judge O'Kelley's June 14, 2004 or July 21, 2004 Orders dismissing the "Original Complaint."

---

**2.** The docket shows that Plaintiff improperly filed that Motion, pursuant to FED. R. CRIM. P. 41(e). That Rule, however, concerns the issuance of a search warrant. Instead, FED. R. CRIM. P. 41(g) governs motions for return of property:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary

to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

FED. R. CRIM. P. 41(g).

**3.** On September 5, 2000, Plaintiff was required to post a $5,000 bond with the Federal Bureau of Investigation in order to contest the seizure and criminal forfeiture action of the $59,920.

On August 4, 2004, the United States Court of Appeals for the Eleventh Circuit dismissed Plaintiff's November 6, 2003 appeal of the August 28, 2003 Order denying Plaintiff's Motion for Return of Property, pursuant to Rule 41(g), for failure to prosecute because Plaintiff failed to file a brief within the time set by the rules. *See* 11TH CIR. R. 42–2(e); *see also United States v. Gonzalo Garcia Carranza*, No. 03–15679–BB (11th Cir. Aug. 4, 2004) (Dismissal Order).

### B. Proceedings In The United States Court Of Federal Claims.

On August 27, 2004, Plaintiff filed a Complaint in the United States Court of Federal Claims alleging an illegal taking of the $59,920 seized from Plaintiff's hotel room and the $5,000 criminal forfeiture bond. *See* Compl. ¶¶ 27, 29. In addition to naming the United States (the "Government") as a defendant, Plaintiff also named as defendants Acting Solicitor General Paul D. Clements and the Federal Bureau of Investigation. *See* Compl. at 1–2.

On December 10, 2004, the Government filed a Motion to Dismiss for lack of subject matter jurisdiction, pursuant to RCFC 12(b)(2),[4] and for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6). On January 21, 2005, Plaintiff filed a Motion to Deny Defendant's Motion to Dismiss and Motion to Set Discovery Schedule and Trial Date, Or In the Alternative, [To] Issue Judgment in Favor of the Plaintiff, together with an Appendix thereto. On March 7, 2005, the Government filed a Reply Brief in Support of Motion to Dismiss and Opposition to Plaintiff's Motion to Set Discovery Schedule and Trial Date, Or In the Alternative, [To] Issue Judgment in Favor of the Plaintiff.

On March 24, 2005, Plaintiff filed a Motion for Leave to File a Rebuttal. On March 31, 2005, the court granted Plaintiff's March 24, 2005 Motion allowing Plaintiff until April 15, 2005 to file a rebuttal. On April 19, 2005, Plaintiff filed that Rebuttal.

## DISCUSSION

### A. Jurisdiction.

The United States Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). Therefore, in order to come within the jurisdictional reach of the Tucker Act, a plaintiff must identify and plead a constitutional provision, federal statute, independent contractual relationship, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed.Cir.2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act."); *see also Roth v. United States*, 378 F.3d 1371, 1384 (Fed.Cir.2004) ("Because the Tucker Act itself does not provide a substantive cause of action, ... a plaintiff must find elsewhere a money-mandating source upon which to base a suit.").

### B. *Pro Se* Plaintiff Pleading Requirements.

In the United States Court of Federal Claims, the pleadings of a *pro se* plaintiff traditionally have been held to a less stringent standard than those of a litigant represented by counsel. *See Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972))

---

4. Although the Government's December 10, 2004 Motion to Dismiss cited RCFC 12(b)(2), the text of the motion challenged subject matter jurisdiction, governed by RCFC 12(b)(1). Therefore, the court assumes this was a typographical error and is considering the Government's December 10, 2004 Motion pursuant to RCFC 12(b)(1).

(stating that *pro se* complaints " 'however inartfully pleaded' are held to less stringent standards than formal pleadings drafted by lawyers[.]"). Indeed, it has long been the role of this court to examine the record "to see if [a *pro se* ] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 188 Ct.Cl. 456, 468, 412 F.2d 1285 (1969). The court has extended that accommodation to Plaintiff in this case.

## C. Standard For Decision.

A challenge to the "court's general power to adjudicate in specific areas of substantive law ... is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed.Cir.1999); *see also Fisher v. United States*, 402 F.3d 1167, 1173 (Fed.Cir.2005) ("If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act."); RCFC 12(b)(1).

In ruling on a motion to dismiss for lack of subject matter jurisdiction, "the allegations stated in the complaint are taken as true and jurisdiction is decided on the face of the pleadings." *Folden v. United States*, 379 F.3d 1344, 1354 (Fed.Cir.2004) (citing *Shearin v. United States*, 992 F.2d 1195, 1195–96 (Fed.Cir.1993)); *see also* RCFC 12(b)(1). As the non-moving party, Plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Awad v. United States*, 301 F.3d 1367, 1375 (Fed.Cir. 2002) (quoting *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991)) ("A party seeking the exercise of jurisdiction in its favor has the burden of establishing that such jurisdiction exists.").

## D. Resolution Of The Government's Motion To Dismiss.

### 1. The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate Claims Of Alleged Wrongful Conduct By A Government Official.

■ Alleged wrongful conduct by governmental officials in their official capacity are tort claims over which the United States Court of Federal Claims does not have jurisdiction. *See* 28 U.S.C. § 1346(b) ("[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."); *see also Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 391–94, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (holding that, under certain circumstances, a party may bring an action for violations of constitutional rights against Government officials in their individual capacities); *Brown v. United States*, 105 F.3d 621, 624 (Fed.Cir. 1997) ("The Tucker Act grants the [United States] Court of Federal Claims jurisdiction over suits against the United States, not against individual federal officials.").

■ Therefore, all claims asserted in the Complaint in this action against individual defendant Paul D. Clement, then Acting Solicitor General, are dismissed for lack of subject matter jurisdiction. To the extent Plaintiff is alleging other claims against the United States, the court addresses such claims below.

### 2. Plaintiff's Other Claims Are Barred By The Doctrine Of *Res Judicata*.

■ The Complaint alleges that the Government "did an illegal taking of the $59,920.00 and the $5,000.00 bond to offset a $100,000.00 fine [for the criminal conviction] without due process." *See* Compl. at II. The Complaint also alleges that the United States District Court for the Northern District of Georgia, Gainesville Division, improperly imposed a fine of $100,000 "without authority under the Constitution ... [and] entered an amendment to the sentencing order to seize the monies for payment of the fine approxi-

mately two months after sentencing on June 2, 2001." Compl. ¶¶ 13–14, 31. Specifically, the Complaint alleges that the United States District Court for the Northern District of Georgia did not have "authority at law to amend or modify the plaintiff's sentence forty-three (43) days after he was sentenced." Compl. ¶ 30. Plaintiff's Response Brief argues that since the jury found that the $59,920.00 seized from his hotel room were not the proceeds of the criminal conspiracy, the Government was required immediately to return that money to Plaintiff and could not apply it as an offset to the criminal fine. *See* Pl. Response ¶¶ 3–6.

The Government argues that the United States Court of Federal Claims does not have jurisdiction over claims concerning "the post-conviction return of [Plaintiff's] property in the United States District Court for the Northern District of Georgia [pursuant to FED. R. CRIM. P. 41(g)] [because Plaintiff] failed to obtain a final determination from the district court that would entitle him to assert a takings claim in this Court." *See* Gov't Mot. to Dismiss at 5. The Government further argues that the United States Court of Federal Claims does not have jurisdiction to review the decisions of United States District Courts concerning the imposition of fines. *See* Gov't Mot. To Dismiss at 8.

■ The United States Court of Federal Claims has jurisdiction under the Tucker Act in cases where a "plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum; ... the claim must assert that the value sued for was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1556 (Fed.Cir.1997) (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (1967)). In the context of seeking return of property seized at arrest, however, Plaintiff first must file a motion for return of property pursuant to FED. R. CRIM. P. 41(g) before invoking the jurisdiction of the United States Court of Federal Claims to assert a takings claim. *See Duszak v. United States,* 58 Fed.Cl. 518, 521 (2003) ("Until plaintiff has availed herself

of [FED. R. CRIM. P. 41(g)] and obtained a final decision ... the taking claim filed in this court is not ripe for decision."); *see also Carter v. United States,* 62 Fed.Cl. 365, 369 (2004) ("A party may have a valid takings claim in the event his property was seized by the Government as part of a criminal investigation and never forfeited or returned; however, this claim for just compensation is not ripe until the aggrieved party has availed himself of the procedures set forth in Rule 41(g) and obtained a final decision from the district court that entitles him to assert a takings claim.").

Contrary to the Government's argument that Plaintiff did not seek post-conviction return of the $59,920 seized from Plaintiff's hotel room as provided by FED. R. CRIM. P. 41(g), on July 10, 2003, Plaintiff filed a Motion to Return Property, pursuant to FED. R. CRIM. P. 41(g), in the United States District Court for the Northern District of Georgia, Gainesville Division. *See United States v. Gonzalo Garcia Carranza, et al.,* No. 2:00–CR–00032–WCO–SSC–ALL (N.D.Ga. July 10, 2003) (Motion for Return of Property Pursuant to FED. R. CRIM. P. 41). On August 28, 2003, the United States District Court for the Northern District of Georgia, Gainesville Division, however, denied Plaintiff's Motion for Return of Property, pursuant to FED. R. CRIM. P. 41(g), and approved the Government's offset of such currency against the criminal fine levied against Plaintiff as a part of his sentence for the conspiracy conviction. *See United States v. Gonzalo Garcia Carranza, et al.,* No. 2:00–CR–00032–WCO–SSC–ALL (N.D.Ga. Aug. 28, 2003) (Order Denying Motion for Return of Property). That federal trial court also denied a subsequent identical request by Plaintiff for return of the $59,920, as well as the $5,000 bond. *See Gonzalo Carranza Garcia v. United States,* No. 2:04–CV–001–WCO, slip op. at 6–9 (N.D. Ga. June 14, 2004) (Order Dismissing Plaintiff's Complaint). Plaintiff then appealed the August 28, 2003 Order denying Plaintiff's FED. R. CRIM. P. 41(g) Motion and the United States Court of Appeals for the Eleventh Circuit dismissed Plaintiff's appeal for failure to prosecute, pursuant to Eleventh Circuit Rule 42–2(c), because Plaintiff failed to file a brief within the time required. *See United*

*States v. Gonzalo Garcia Carranza,* No. 03–15679–BB (11th Cir. Aug. 4, 2004) (Dismissal Order). Plaintiff did not appeal the United States District Court's June 14, 2004 or July 21, 2004 Orders Dismissing Plaintiff's May 5, 2003 "Original Complaint" transferred from the United States District Court for the Southern District of Texas, McAllen Division, that included a claim for return of the $59,920 and the $5,000 bond.

The United States Court of Appeals for the Federal Circuit recently reaffirmed that the doctrine of *res judicata* encompasses both claim preclusion and issue preclusion. *See Carson v. Dept. of Energy,* 398 F.3d 1369, 1375 (Fed.Cir.2005) (citing *Migra v. Warren City Sch. Dist. Bd. of Ed.,* 465 U.S. 75, 77, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)) (emphasis added) ("The preclusive effects of former adjudication . . . are referred to collectively . . . as the doctrine of '*res judicata.*' *Res judicata* is often analyzed further to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion.' "). Issue preclusion concerns the "effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect is also referred to as direct or collateral estoppel." *Carson,* 398 F.3d at 1375 (citations omitted); *see also Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (citations omitted) (emphasis added) ("A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and *res judicata,* is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit by the same parties or their privies.' "). Claim preclusion refers to the "effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Carson,* 398 F.3d at 1375.

Therefore, because the United States District Court for the Northern District of Georgia, Gainesville Division, has entered a final judgment on Plaintiff's Motion for Return of Property, pursuant to FED. R. CRIM. P. 41(g), that subsequently was affirmed on appeal, Plaintiff's claims in the United States Court of Federal Claims are barred by the doctrine of *res judicata.*

Assuming *arguendo* that the doctrine of *res judicata* is not applicable, the United States Court of Federal Claims does not have jurisdiction to review final judgments of the United States District Court for the Northern District of Georgia, Gainesville Division, including FED. R. CRIM. P. 41(g), or final judgments of the United States Court of Appeals for the Eleventh Circuit. *See* 28 U.S.C. § 1254 ("Cases in the courts of appeals may be reviewed by the Supreme Court . . . [b]y writ of certiorari[.]"); 28 U.S.C. § 1291 ("The court of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States[.]"); *see also Vereda, Ltda. v. United States,* 271 F.3d 1367, 1375 (Fed.Cir. 2001) (quoting *Allustiarte v. United States,* 256 F.3d 1349, 1352 (Fed.Cir.2001)) ("This means that the Court of Federal Claims cannot entertain a taking claim that requires the court to 'scrutinize the actions of' another tribunal."); *Joshua v. United States,* 17 F.3d 378, 380 (Fed.Cir.1994) ("[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts.").

With respect to Plaintiff's claims regarding the imposition of the $100,000 fine "without authority under the Constitution[,]" the United States Court of Federal Claims also is jurisdictionally precluded from reviewing final judgments of the United States District Courts regarding the imposition of a criminal fine. *See* 28 U.S.C. § 1291 ("The court of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States[.]"); *see also* 28 U.S.C. § 1355 ("The district courts shall have original jurisdiction . . . of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress[.]"). Jurisdiction over any aspect of Plaintiff's final conviction and sentence in this case, as a matter of law, only may be considered by the United States Court of Appeals for the Eleventh Circuit. *See* 28 U.S.C. § 1291 ("The court of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the

United States[.]"). On January 24, 2002, Plaintiff's conviction and sentence, including the fine and special assessment, were affirmed by the United States Court of Appeals for the Eleventh Circuit. *See United States v. Gonzalo Garcia Carranza,* 31 Fed. Appx. 930 (11th Cir.2002), *cert. denied,* 537 U.S. 862, 123 S.Ct. 246, 154 L.Ed.2d 103 (2002). Accordingly, the United States Court of Federal Claims has no jurisdiction over the claims asserted in this case.

## CONCLUSION

For the foregoing reasons, the Government's December 10, 2004 Motion to Dismiss is GRANTED. Plaintiff's January 21, 2005 Motion to Set Discovery Schedule and Trial Date, Or In The Alternative, [To] Issue Judgment in Favor of the Plaintiff is DENIED. The Clerk is ordered to dismiss the August 27, 2004 Complaint, with prejudice.

**IT IS SO ORDERED.**