NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**RALPH D. ARELLANES, SR.,**
*Petitioner*

**v.**

**DEPARTMENT OF DEFENSE,**
*Respondent*

---

2023-1806

---

Petition for review of the Merit Systems Protection Board in No. DE-0752-15-0021-C-1.

---

Decided: July 25, 2025

---

J. KAIN DAY, Munger, Tolles & Olson LLP, Washington, DC, argued for petitioner. Also represented by VINCENT LING, Los Angeles, CA.

BRYAN MICHAEL BYRD, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by REGINALD THOMAS BLADES, JR., BRIAN M. BOYNTON, PATRICIA M. MCCARTHY; SARA ACHINGER, Office of the General Counsel, Defense Threat Reduction Agency, Ft. Belvoir, VA.

————————————

Before LOURIE, REYNA, and CUNNINGHAM, *Circuit Judges.*

CUNNINGHAM, *Circuit Judge.*

Ralph D. Arellanes petitions for review of a Merit Systems Protection Board ("Board") final order, which denied his petition for review and affirmed the administrative judge's compliance initial decision. *Arellanes v. Dep't of Def.*, No. DE-0752-15-0021-C-1, 2023 WL 2137362, at *1 (M.S.P.B. Feb. 21, 2023) ("*Final Order*"). For the reasons discussed below, we *vacate* and *remand*.

## I.    BACKGROUND

For nearly thirty years, Mr. Arellanes worked at the Defense Threat Reduction Agency with the Department of Defense (the "Agency"). J.A. 93. Around the summer of 2014, Mr. Arellanes experienced conflict with his supervisor, which ultimately led to the Agency's September 30, 2014 removal of Mr. Arellanes for conduct unbecoming a federal employee. *Final Order* at *1; J.A. 93, 95–98, 1424–25. Prior to his removal, also around the summer of 2014, Mr. Arellanes began inquiring into and gathering information for an application for disability retirement. J.A. 532, 1487, 1610–11.

Two days after his September 30, 2014 removal, Mr. Arellanes filed a timely Board appeal to challenge his removal, raising the affirmative defenses of "age, race, and ethnicity discrimination, failure to accommodate his disability, and reprisal for whistleblowing and equal employment opportunity (EEO) activity." *Final Order* at *1; J.A. 47–52, 891.

Around this same time, in October 2014, Mr. Arellanes formally applied for disability based on his carpal tunnel, trigger finger surgeries, a broken back, and "chronic, constant, [and] excruciating pain" in his "hands, fingers, wrists, shoulders, back, and legs." *Final Order* at *1 & n.2

(citation omitted); J.A. 1487–88, 1495–96, 1610. On January 23, 2015, the Office of Personnel Management ("OPM") approved his application for disability retirement benefits effective October 1, 2014. *Final Order* at *1, *4 n.5; J.A. 1504, 1508.

On March 31, 2015, in his initial decision, the administrative judge rejected Mr. Arellanes's affirmative defenses and affirmed the Agency's removal decision. *Final Order* at *1; J.A. 868–911. Mr. Arellanes subsequently filed a petition for review challenging the administrative judge's initial decision. *Final Order* at *1; J.A. 1108–30. On August 10, 2015, the Board granted his petition for review and vacated the administrative judge's initial decision in part, finding that Mr. Arellanes established a prima facie case of whistleblower reprisal by showing that he made a protected disclosure that was a contributing factor in his removal. *Final Order* at *1; J.A. 1195–98 ¶¶ 10–14. The Board then remanded the case to the administrative judge to determine whether the Agency met its burden to prove that it would have removed Mr. Arellanes even absent his whistleblowing activities. *Final Order* at *1; *see also* J.A. 1198–1200 ¶¶ 15–18.

On December 7, 2015, on remand, the administrative judge reversed Mr. Arellanes's removal decision, finding that the Agency did not meet its burden of showing that it would have removed Mr. Arellanes absent his protected disclosure. *Final Order* at *2; J.A. 1422–41 ("2015 Remand Decision"). The administrative judge subsequently ordered the Agency to cancel Mr. Arellanes's removal, retroactively restore Mr. Arellanes to his position effective September 30, 2014, and provide Mr. Arellanes with back pay and benefits. *Final Order* at *2; J.A. 1432. The 2015 Remand Decision became final on January 11, 2016, after neither party petitioned for review. *Final Order* at *2; J.A. 1435.

Consequently, the Agency canceled Mr. Arellanes's removal and issued a new SF-50 indicating that he retired on

disability effective September 30, 2014. *Final Order* at *2; J.A. 1482–83. However, the Agency "took no further action to implement the relief ordered by the administrative judge." *Final Order* at *2. Mr. Arellanes filed a petition for enforcement, arguing that the Agency failed to comply with the 2015 Remand Decision, including failing to provide him with back pay and benefits. *Final Order* at *2; J.A. 1447–63.

On August 4, 2016, the administrative judge denied Mr. Arellanes's petition for enforcement. *Final Order* at *2; J.A. 25–34 ("2016 Compliance Initial Decision"). The administrative judge concluded that because Mr. Arellanes was granted disability retirement effective retroactively to the date of his removal, the doctrine of judicial estoppel barred Mr. Arellanes from seeking relief. J.A. 26–27. Alternatively, the administrative judge found that Mr. Arellanes was not ready, willing, and able to work. J.A. 27. Mr. Arellanes petitioned the Board for review of the 2016 Compliance Initial Decision. *Final Order* at *3; J.A. 1536–47.

On February 21, 2023, the Board denied Mr. Arellanes's petition for review and affirmed the 2016 Compliance Initial Decision.[1] *Final Order* at *1. The Board first declined to apply judicial estoppel to preclude Mr. Arellanes's reinstatement and back pay. *Id.* at *3–4. Next, the Board concluded that the Agency complied with the 2015 Remand Decision to reinstate Mr. Arellanes and pay him appropriate back pay and benefits. *Id.* at *4–7. The Board found that Mr. Arellanes did not meet his burden to show that he was ready, willing, and able to perform his duties of his former position for the period in which he requested back pay. *Id.* at *7. Furthermore, the Board determined

---

[1]    The Board also modified the 2016 Compliance Initial Decision to address Mr. Arellanes's claim for interim relief, which is not on appeal. *See Final Order* at *1, *3.

that the Agency complied with the 2015 Remand Decision in reinstating Mr. Arellanes because the Agency could not provide further relief in light of OPM's grant of disability retirement benefits effective October 1, 2014. *Id.*

Mr. Arellanes timely petitioned for review in this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II.  STANDARD OF REVIEW

Our review of Board decisions is limited. *Norris v. SEC*, 675 F.3d 1349, 1352 (Fed. Cir. 2012). "We may only set aside agency actions, findings, or conclusions that we find to be '(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.'" *Id.* (quoting 5 U.S.C. § 7703(c)).

## III. DISCUSSION

Mr. Arellanes argues that the Board erred by applying the wrong legal standards in adjudicating his requests for reinstatement and back pay. Appellant's Br. 29. Specifically, Mr. Arellanes argues that the Board failed to apply remedial principles in considering his requests for reinstatement, *id.* at 32–53, and erred when it denied Mr. Arellanes back pay. *Id.* at 53–67. We address each argument in turn.

## A.

Mr. Arellanes argues that in considering his requests for reinstatement, the Board failed to adhere to the basic remedial principle that an aggrieved party must be returned to the position he would have been in but for the harm. Appellant's Br. 32–39. Specifically, Mr. Arellanes claims that the Board was required to consider whether Mr. Arellanes would have chosen to formally apply for disability retirement in October 2014 even if he had not been removed on September 30, 2014, because "[a]n employee

who is terminated in retaliation for whistleblowing must be compensated for all harm flowing from that termination." *Id.* at 32. We agree.

Where a legal injury is an economic one, the general rule is that "[t]he injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418–19 (1975) (quoting *Wicker v. Hoppock*, 73 U.S. (6 Wall.) 94, 99 (1867)). This "fundamental principle of corrective remedies" has been "used throughout the law, though sometimes with modifications." *Pirkl v. Wilkie*, 906 F.3d 1371, 1378 (Fed. Cir. 2018) (collecting cases). Thus, the agency must restore that person to the status quo ante—that is, "restoration of the situation, as nearly as possible, to that which [he] would have obtained but for" the wrongful action. *Kerr v. Nat'l Endowment for the Arts*, 726 F.2d 730, 733 (Fed. Cir. 1984) (quoting *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194 (1941)); *see also id.* at 733 n.3.

We see no reason that this fundamental principle of corrective remedies would not apply in the context of "corrective action" ordered under the Whistleblower Protection Act ("WPA"). *See* Whistleblower Protection Act of 1989, Pub. L. No. 101-12, 103 Stat. 16 (codified as amended by Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, 126 Stat. 1465 in scattered sections of 5 U.S.C.). Congress has provided employees the right to seek corrective action from the Board when a prohibited personnel action is taken in retaliation for certain whistleblowing activities, including disclosures under 5 U.S.C. § 2302(b)(8). *See* 5 U.S.C. § 1221(a); *Marano v. Dep't of Just.*, 2 F.3d 1137, 1139–40 (Fed. Cir. 1993). The Board must order corrective action if the employee's protected disclosure "was a contributing factor in the personnel action which was taken . . . against such employee . . . ." 5 U.S.C. § 1221(e)(1); *Marano*, 2 F.3d at 1140. If the Board orders such corrective action, such corrective action may include

placing the individual "as nearly as possible, in the position the individual would have been in had the prohibited personnel practice not occurred." 5 U.S.C. § 1221(g)(1)(A)(i). The text of the WPA thus incorporates make-whole principles. Moreover, we have previously interpreted the WPA as expressing Congress's intent to "provide protected employees with *make-whole relief*." *Perlick v. Dep't of Veterans Affs.*, 104 F.4th 1326, 1330 (Fed. Cir. 2024) (emphasis added) (concluding under 5 U.S.C. § 1221(g)(1)(A)(i)–(ii), Congress expanded recovery available to protected whistle-blowers). We see no basis for concluding that corrective remedies granted under the WPA should depart from this fundamental principle.

Here, the Board failed to adhere to this principle in assessing Mr. Arellanes's reinstatement request. Although the Board recognized this fundamental principle of corrective remedies in making the assessment, *Final Order* at \*4 (citing *Kerr*, 726 F.2d at 733), the Board treated Mr. Arellanes's disability retirement as an "intervening separation" that precluded any additional relief. *Id.* at \*7. The Board reasoned that "[i]n light of OPM's grant of disability retirement benefits effective October 1, 2014, and [its] finding that the appellant failed to establish he was ready, willing, and able to work at any point following his removal, we find that there is no further relief the [A]gency can provide under the unique circumstances of this case." *Id.* The Board further determined that "there is no . . . finding that [Mr. Arellanes] retired on disability shortly after his removal solely due to the [A]gency's final decision to remove him." *Id.* at \*7 n.9. Absent from the Board's analysis is any discussion addressing the argument that, but for his September 30, 2014 removal, Mr. Arellanes would not have chosen to formally apply for disability retirement in October 2014. Thus, the Board's analysis regarding whether the Agency's cancellation of his removal placed Mr. Arellanes "as nearly as possible in the *status quo ante*," *Kerr*,

726 F.2d at 733, prior to his removal is flawed and incomplete.

We have applied similar reasoning when addressing remedies available to wrongfully terminated employees under the Back Pay Act. In *Martin v. Department of the Air Force*,[2] the appellant was injured while working a job with a non-governmental employer during the same time period that he was challenging his removal from employment with the Air Force. 184 F.3d 1366, 1367 (Fed. Cir. 1999). The Board relied on this injury to deny the appellant back pay under the Back Pay Act for the period when he was receiving state workers' compensation benefits. *Id.* at 1368–69. We reversed, holding that "denying an employee back pay for a period of disability without looking at the cause of the disability is unreasonable." *Id.* at 1371. Given the purpose of the Back Pay Act is to "make the employee whole," we explained that equity "require[s] that if such an employee is unable to work because . . . of the unlawful discharge, the period of disability should be included in a back pay period." *Id.* at 1372. Like the Back Pay Act, the WPA expresses Congress's intent to provide make-whole relief to protected employees. *Perlick*, 104 F.4th at 1330. The court's reasoning in *Martin* thus supports the conclusion that the Board was required to consider whether Mr. Arellanes's retirement arose "because of [his] unlawful discharge." *Martin*, 184 F.3d at 1372.

Because the Board did not consider whether Mr. Arellanes would have formally applied for disability retirement in October 2014 even if he had not been removed on September 30, 2014, we vacate and remand to the Board.

---

[2]    *Martin* is still good law even after *Loper Bright*. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). Regardless, we declined to defer to the agency's interpretation of the Back Pay Act in *Martin*. *See Martin*, 184 F.3d at 1370–71.

Whether there is a possibility of reinstatement is for the Board to decide in adherence to the legal principles we articulate above. On remand, the Board should consider and weigh the evidence as to whether Mr. Arellanes would have formally applied for disability retirement in October 2014 but for his September 30, 2014, removal.

## B.

Mr. Arellanes argues that the Board erred when it denied Mr. Arellanes's request for back pay using a burden shifting framework that "placed (1) an initial burden of production on the [Agency] and (2) the ultimate burden of persuasion on Mr. Arellanes." Appellant's Br. 55; *see also id.* at 54–60. Mr. Arellanes further claims that no record evidence suggests that he was unready, unwilling, or unable to work after August 23, 2016. *Id.* at 61–65. Mr. Arellanes thus asks us to conclude that he is entitled to back pay starting on August 23, 2016, and to remand for the Board to adjudicate the availability of back pay from September 30, 2014, through August 22, 2016. *Id.* at 67. For the reasons stated below, we conclude that the Board did not err in its burden placement and remand for further consideration of the issue of back pay.

### i.

We first address whether the Board erred by shifting the ultimate burden of proof onto Mr. Arellanes to prove his entitlement to back pay. In enforcement proceedings, "the [a]gency bears the burden of proving compliance with a final Board order," *Carson v. Dep't of Energy*, 398 F.3d 1369, 1377 (Fed. Cir. 2005), by a "preponderance of the evidence." 5 C.F.R. § 1201.183(d). However, an employee is not entitled to back pay for any period of time in which the employee was not "ready, willing, and able to perform" his duties because of "incapacitating illness or injury," or "for reasons other than those related to, or caused by, the unjustified or unwarranted personnel action." 5 C.F.R. § 550.805(c)(1)–(2).

The Board concluded that Mr. Arellanes was not entitled to back pay and benefits. *Final Order* at *4–7. The Board reasoned that Mr. Arellanes "has the burden of proof to show that he was ready, willing, and able to work during the period for which he requests back pay." *Id.* at *4. After giving Mr. Arellanes the opportunity to show that he was ready, willing, and able to perform the duties of his prior position, the Board concluded that "his submissions fail to resolve the conflicts between his prior statements and other record evidence showing that he was not ready, willing, and able to perform the duties of his prior position at the time of his removal or since." *Id.* at *7. Therefore, the Board held that the Agency complied with the 2015 Remand Decision. *Id.*

In addressing which party has the ultimate burden of proof, the Board relied on our predecessor court's decision in *Piccone v. United States*, 407 F.2d 866, 876 (Ct. Cl. 1969). *See Final Order* at *4. There, the plaintiff sued the government, seeking back pay, alleging his separation from the Navy was unlawful. *Piccone*, 407 F.2d at 871. The court held that "the plaintiff must ultimately sustain the *burden of proving*, as part of his claim, that he was ready, willing and able to perform at all times since" the date from which he sought back pay. *Id.* at 876 (emphasis added). "In order to confine this burden within reasonable limits," the court held that the government was required "to demonstrate that it has some concrete and positive evidence, as opposed to a mere theoretical argument, that there is some substance to its affirmative defense and is not a mere fishing expedition or a method of discouraging employees from seeking back pay on meritorious claims." *Id.* (citation omitted and cleaned up).

In this case, the Board did not err in placing the ultimate burden of proof on Mr. Arellanes. Although Mr. Arellanes is correct that the Agency bore the burden of proving compliance with the 2015 Remand Decision, *see Carson*, 398 F.3d at 1377, Mr. Arellanes still was required to prove

that he was ready, willing, and able to perform his duties as of the date from which he sought back pay. *See Groves v. United States*, 47 F.3d 1140, 1146 (Fed. Cir. 1995) (applying *Piccone* and noting that the employee "had to prove that he was ready, willing, and able to serve"); *Cunningham v. United States*, 549 F.2d 753, 760 (Ct. Cl. 1977) ("It is clearly the [employee's] burden to prove that she was ready, willing and able to discharge the duties of the position from which she was illegally separated . . . before she can recover back pay.") (collecting cases). Thus, the Board did not err in placing the ultimate burden of proof on Mr. Arellanes to show that he was ready, willing, and able to perform his duties.

ii.

Next, we address whether Mr. Arellanes is entitled to back pay. Mr. Arellanes argues that "even under the Board's burden-shifting framework and assuming the burden shifted to Mr. Arellanes, the [c]ourt should at least reverse the denial of back pay starting August 23, 2016."[3] Appellant's Br. 67.

We cannot determine on the record before us whether the Board's failure to consider whether Mr. Arellanes would have chosen to retire absent his removal infected the Board's decision on whether Mr. Arellanes was "ready, willing, and able" to work for the disputed time period beginning on August 23, 2016. 5 C.F.R. § 550.805(c)(1)–(2); *see, e.g.*, J.A. 1603 ¶ 12 (declaration of Mr. Arellanes) ("[Mr. Arellanes] was not accommodated in 2014. The Agency thus, in addition to wrongfully terminating [his] employment in retaliation of [his] whistleblowing activity, forced [him] into disability retirement."). For this reason,

---

[3]    Mr. Arellanes does not appear to dispute the unavailability of back pay from September 30, 2014, to August 22, 2016. *See* Appellant's Br. 65–67.

we vacate and remand so that the Board can determine in the first instance whether Mr. Arellanes is eligible for back pay for the period beginning on August 23, 2016.

## IV. CONCLUSION

For the reasons above, we *vacate* the Board's decision and *remand* for further proceedings consistent with this opinion.

**VACATED AND REMANDED**

### COSTS

Costs to petitioner.